IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC,<br><br>Plaintiff/<br>Counterclaim Defendant,<br><br>v.<br><br>TVISION INSIGHTS, INC.,<br><br>Defendant/<br>Counterclaim Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 25-575-CJB |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM ANDREW E. RUSSELL IN RESPONSE TO NIELSEN'S <u>MOTION TO STAY</u>**


Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant-Counterclaim Plaintiff TVision Insights, Inc.*

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Eric C. Cohen
RIMÔN LAW P.C.
4030 Wake Forest Road, Suite 300
Raleigh, NC 27609
(984) 960-2860

Steig D. Olson
Sami H. Rashid
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART
& SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
(617) 712-7100

Adam B. Wolfson
QUINN EMANUEL URQUHART
& SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Benjamin D. Brown
Richard A. Koffman
Daniel McCuaig
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

Dated: February 13, 2026

Dear Judge Burke:

As TVision alleges in its counterclaims, "For years, Nielsen has used a number of anticompetitive tactics to unlawfully maintain its decades-long monopoly over TV audience measurement services in the United States" (D.I. 30 ¶ 1[1]), forcing U.S. consumers to pay much higher prices for Nielsen's (low-quality) product than consumers pay in regions where competition prevails (*Id.* ¶ 30). Nielsen now moves to stay TVision's claims to delay indefinitely litigating antitrust issues that have the potential to bring much-needed competition to this U.S. market. If a stay is granted, consumers will continue to suffer, and rivals like TVision will remain blocked by Nielsen's unlawful exclusionary arrangements and potentially driven out of the market entirely.

Nielsen argues that the Court should stay TVision's antitrust counterclaims until the final resolution of Nielsen's patent infringement lawsuits against TVision because the resolution of those lawsuits might inform whether they were "sham" litigations. But Nielsen's filing of a series of lawsuits against potential rivals such as TVision is only one of multiple tactics that Nielsen has used to block rivals and to maintain its monopoly. TVision's antitrust counterclaims are much broader and do not depend on the outcome of any patent lawsuit. Thus, a stay is unjustified.

TVision alleges anticompetitive conduct by Nielsen on numerous grounds that are unrelated to Nielsen's lawsuits against rivals. (D.I. 30 ¶¶ 4–5, 48–79.) In particular, TVision alleges Nielsen has used a number of unlawful tactics to "lock its customers into using Nielsen's and ***only*** Nielsen's TV audience measurement services." (*Id.* ¶ 3.) These include (1) locking customers into *de facto* exclusive contracts by prohibiting the use of competitor data with Nielsen data; (2) using long-term contracts with staggered end dates; (3) conditioning its customers' access to their own historical data on continued purchase of Nielsen's TV audience measurement services; and (4) punishing any content provider that leaves Nielsen by hiding its programming data from advertisers. (*Id.* ¶¶ 50–86.) A jury could find Nielsen liable for monopolization for engaging in these lock-in tactics without regard to *any* of Nielsen's lawsuits. Nielsen's stay arguments simply ignore these allegations and fail to explain how staying the case will have any effect whatsoever on resolving its liability for this conduct.

Instead, Nielsen argues that TVision's counterclaims should be stayed because Nielsen could potentially succeed in one of three patent suits still pending against TVision. But even as to this prong of TVision's allegations, Nielsen ignores TVision's primary theory, which is that Nielsen has engaged "in a pattern and practice of using the judicial process as an anticompetitive weapon rather than for its intended purpose of protecting legitimate legal rights." (*Id.* ¶ 88.) In support, TVision alleges Nielsen has filed at least *twelve* lawsuits against not just TVision, but also "against other companies critical to TVision's ability to compete," and did so not to vindicate valid patent rights, "but to drain a competitor's resources and signal to the market that any company daring to compete with Nielsen will face a costly legal bombardment, regardless of merit." (*Id.*) Given these allegations, even if Nielsen were to squeak out a victory in a patent case, it would not undermine the underlying claims. Thus, a stay would not help resolve Nielsen's liability for this conduct either. Under Nielsen's theory, moreover, an alleged monopolist that has been filing a series of burdensome lawsuits as a weapon to harm rivals could delay having to defend against antitrust claims so long as it keeps filing new lawsuits to keep some portion of its claims alive. That is not the law, and it is not consistent with public policy that favors the efficient resolution of

---

[1] References to TVision's Answer and Counterclaims, D.I. 30, refer to the paragraph numbers of the counterclaims, which start on page 12.

significant antitrust claims like these, which seek to stop monopolistic conduct that is leading to less choice, lower quality, and higher prices.[2]

"In determining whether a stay is appropriate, courts consider the following three factors: (1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay or allow the movant to gain a clear tactical advantage."[3] *Jazz Pharms., Inc. v. Avadel CNS Pharms. LLC*, 2025 WL 1529799, at *2 (D. Del. May 29, 2025) (citation omitted). "The most important factor . . . is whether the stay is likely to simplify the issues at trial." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2019 WL 3943058, at *8 (D. Del. Aug. 21, 2019). These factors weigh heavily against a stay here.

### A. A Stay Will Not Simplify the Issues for Trial.

TVision alleges Nielsen has blocked all effective competition from the U.S. market for TV audience measurement by engaging in several exclusionary tactics. (D.I. 30 ¶¶ 4–5.) Nielsen largely ignores TVision's core allegations to focus narrowly on a few of the Nielsen lawsuits that TVision alleges are part of an anticompetitive series. (*See* D.I. 55.) By selectively ignoring the bulk of TVision's claims, Nielsen effectively concedes those claims will not be simplified by resolution of the patent suits—thus, this factor favors denial.

*First*, TVision alleges Nielsen forces customers into *de facto* exclusive arrangements by prohibiting them from "commingling" its data with other firms' data—including even preparing internal documents that lay Nielsen's data side-by-side with other firms' (such as TVision's). (D.I. 30 ¶¶ 52–53.) Because Nielsen tells customers that use of other firms' data would violate their contracts, Nielsen's customers steer clear of even trying out TVision's services. (*Id.* ¶ 57.)

*Second*, Nielsen insists that customer contracts run at least five years and staggers the end dates of major customer contracts to ensure only a trickle of potential customers become available to rivals in any given year. (*Id.* ¶¶ 63–66.) Courts have previously recognized that such conduct *by Nielsen*, on its own, is anticompetitive. *See ErinMedia, LLC v. Nielsen Media Rsch., Inc.*, 401 F. Supp. 2d 1262, 1267 (M.D. Fla. 2005) (allegations that Nielsen "secur[ed] multi-year staggered contracts with the four largest broadcast companies, . . . and impos[ed] steep financial penalties on customers who refuse to enter into long term agreements" sufficiently stated a monopolization claim).

*Third*, Nielsen's contracts prevent customers from switching to rivals by dictating that, if a content provider discontinues its subscription to Nielsen data, Nielsen will not allow the content provider access to its own historical data, even if the customer is willing to pay for that access. (D.I. 30 ¶ 76.) Nielsen's requirement that the content provider continue purchasing new data to retain access to historical data makes it infeasible to switch to a different provider. (*Id.* ¶ 77.)

---

[2] This is not the first time Nielsen has sought to stay TVision's antitrust counterclaims, and Nielsen raises many of the same arguments this Court has already rejected. (*See* C.A. 1:22-cv-1345, D.I. 123, 131; C.A. 1:25-cv-575, D.I. 55.)

[3] Nielsen adds a fourth factor, citing *Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014). (D.I. 55 at 1.) But that case contains no such fourth factor. *Princeton*, 2014 WL 3819458, at *2.

*Fourth*, if a content provider stops using Nielsen data, Nielsen hides that content provider and its programming from the data that advertisers use to plan their advertising purchases. (*Id.* ¶ 80.) Nielsen regularly wields this threat against customers during contract renewal negotiations to deter customers from switching to another provider. (*Id.* ¶ 84.)

None of these allegations of Nielsen's monopolistic conduct turn in any way on the outcome of any patent lawsuit. Thus, *even if* Nielsen prevailed in the unresolved patent claims,[4] "the majority of the legal issues relevant to the case will still be pending and unaddressed." *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, 2015 WL 1737476, at *3 (D. Del. Apr. 9, 2015); *see SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255, at *4 (D. Del. Jan. 11, 2013) (finding, in the patent reexamination context, the "more that the scope of the issues to be resolved during the litigation exceeds the scope of the issues that can be examined during the reexamination . . . , the greater this cuts against a finding that the reexamination proceedings will lead to simplification"); *TruePosition, Inc., v. Polaris Wireless, Inc.*, 2013 WL 5701529, at *5 (D. Del. Oct. 21, 2013) ("a stay is appropriate when the only issues for trial overlap with those to be reviewed by the PTO, but where other challenges, including § 112 arguments, are presented, a stay is disfavored").

The cases Nielsen cites in support of its motion to stay contrast sharply with this case. None contained numerous monopolization allegations that had nothing to do with sham litigation; rather, in each, unlike here, the resolution of antitrust counterclaims primarily turned on the resolution of patent disputes.[5] Here, a jury could find Nielsen violated the antitrust laws regardless of the outcome of *any* of the lawsuits Nielsen argues warrant a stay. Accordingly, this factor does not favor a stay.

Moreover, even if these other allegations of Nielsen's monopolistic conduct did not exist, TVision's allegations about Nielsen's "pattern and practice" of filing lawsuits to harass, burden, and block competitors also do not turn on the outcome of any patent lawsuit. (D.I. 30 ¶ 88.) TVision alleges Nielsen has engaged in a *series* of lawsuits designed to harm competition, without regard to the merits of any individual claim. (*Id.* ¶¶ 6–8, 87–179.) Nielsen has filed a parade of patent

---

[4] In characterizing Case No. 22-1345 as "unresolved," Nielsen notes that it has appealed the IPR. (*See* D.I. 55 at 2.) But where, as here, the PTAB has issued a Final Written Decision finding the '243 patent unpatentable, the "mere ***possibility*** (as opposed to 'reasonable likelihood') that the asserted claims could be invalidated [after an] appeal and [that this would] result in simplification is too speculative to be given much weight." *B.E. Tech., L.L.C. v. Twitter, Inc.*, 2023 WL 3478567, at *2 (D. Del. May 16, 2023)(alteration in original) (collecting cases).

[5] *See, e.g.*, *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, 2024 WL 639991, at *4 (D. Del. Feb. 15, 2024) (all counterclaims "based on the allegation that [plaintiff] has improperly asserted [patent infringement]"); *Apotex, Inc. v. Senju Pharm. Co.*, 921 F. Supp. 2d 308, 313 (D. Del. 2013) (three out of the four categories of alleged anticompetitive conduct were based on sham litigation and fraud on the PTO); *Eagle Pharms., Inc. v. Eli Lilly & Co.*, 2018 WL 6201704, at *2 (D. Del. Nov. 27, 2018) (staying where the "antitrust claims involve questions of patent law"); *Shoulder Innovations, Inc. v. Catalyst OrthoScience Inc.*, 2024 WL 5704496, at *3 (D. Del. Dec. 19, 2024) (similar); *Eurand Inc. v. Mylan Pharms. Inc.*, 2009 WL 3172197, at *2 (D. Del. Oct. 1, 2009) (similar); *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 2010 WL 925864, at *4 (D. Del. Mar. 11, 2010) (granting a stay because the "legality of this allegedly anticompetitive action may be affected by the scope of [the plaintiff's] patents").

actions against rival companies and critical suppliers of rival companies, including not only TVision, but also HyphaMetrics, TVSquared, ACRCloud, and VideoAmp. (*Id.* ¶ 89.) Under black letter law, these allegations are more than enough to plead Nielsen's liability, even if Nielsen were somehow able to prevail, "just as a matter of chance," on any particular lawsuit. *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162, 180 (3d Cir. 2015) ("when faced with a series or pattern of lawsuits, the question is not whether any one of them has merit—some may turn out to, just as a matter of chance—but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.") (citation omitted).

TVision also alleges that, in the alternative, each of Nielsen's individual lawsuits against TVision was a sham. Even if this alternative theory were the only theory of liability presented (which it is not), a stay would still be unwarranted. The 22-1345 action is currently on appeal after the Patent Trial and Appeal Board *invalidated* Nielsen's patent in an *inter partes* review. (C.A. No. 22-1345, D.I. 111 at 2; *see* Ex. 1 at 92.) The 22-057 action is set for trial on June 8, 2026. (C.A. No. 22-057, D.I. 336 at 2.) Both the 22-1345 appeal and the 22-057 trial will likely be resolved before the November 15, 2027 trial in the above-captioned action. (*See* D.I. 24 at 18.) That leaves only the patent claim in this case, just one of Nielsen's five sham litigations against TVision, to be "simplified" by deferring resolution of TVision's counterclaims. That single patent claim alone could not justify staying TVision's antitrust counterclaims entirely, even if sham litigation were the only theory of liability presented.

**B. Substantial Resources Have Been Expended in this Case.**

This case is not, as Nielsen argues, in its infancy. The suit was filed over nine months ago, discovery is underway, and the Court has set a trial date. (*See* D.I. 1, 24.) The parties have exchanged initial disclosures, TVision has propounded requests for production (on which the parties are conferring today), and TVision has produced its core technical documents. Fact discovery is set to close on October 30, 2026. *See Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) (finding that, where discovery "will not be complete for another eleven months," the "Court sees no justification here to discard the schedule adopted"). Further, the broader dispute between the parties began in *2021*, and Nielsen has stated its intent to rely on the discovery in prior actions even as to the antitrust issues. (C.A. No. 21-1592-CJB, D.I. 1; *see* Ex. 2 at RFP Nos. 4–6, 10–12, 14, 17–18, 21, 24, 47–48 (excerpts from Nielsen's RFP responses)).

The parties' disputes date back over four years and should be resolved efficiently, not delayed. That is why TVision dismissed its prior antitrust counterclaims, which did not cover the full scope of Nielsen's misconduct because Nielsen continued to expand its scheme. Rather than pursuing two overlapping antitrust counterclaims in two different actions, TVision voluntarily dismissed the first, so the parties' disputes could be resolved once and for all, in the most efficient way possible. A stay would disrupt the efficient resolution of these disputes, leaving them to linger indefinitely. Thus, this factor also weighs against a stay.

**C. A Stay Prejudices TVision and Denial Would Not Unduly Burden Nielsen.**

Nielsen's argument that a stay is not prejudicial because TVision has stated it does not directly compete with Nielsen misses the point. (*See* D.I. 55 at 2–3.) The only reason why TVision has not been able to directly compete head-to-head with Nielsen, despite offering a superior substitute product, is because Nielsen has unlawfully blocked competition through the

anticompetitive conduct challenged in the counterclaims.[6] Unless and until that conduct is enjoined, Nielsen will face no effective competition in the U.S., and consumers will continue to pay higher prices for Nielsen's low-quality product as a result. In other words, the lack of effective competition to Nielsen is the *problem*, not a positive feature of the market landscape, and it is the very reason why it is important to resolve the counterclaims efficiently, as opposed to staying them indefinitely. So long as Nielsen can delay resolution of the counterclaims, it will continue to operate in the U.S. without meaningful competition. This consideration thus strongly weighs *against* a stay.

Granting Nielsen's request to halt all progress on this case would not just perpetuate the *status quo* where Nielsen faces no meaningful competition, it would seriously prejudice TVision. Nielsen requests to stay the case not just through trial, but through all appeals of the related patent cases, a process that will take years. *See B.E. Tech., L.L.C.*, 2023 WL 3478567, at *3 (finding "an open-ended period of delay, rather than a time-limited period" is prejudicial to the nonmoving party and thus weighs against a stay). TVision is fighting for its survival every day as a young, small company under attack from what it alleges is a well-funded monopolist determined to stomp it out of existence. A stay would give Nielsen more time to do precisely that.

Nielsen argues that allowing the antitrust counterclaims to proceed before the underlying patent litigation is resolved would prejudice Nielsen because requiring "a party to engage in such time-consuming, expensive discovery, when that discovery ultimately may not be necessary, is unduly prejudicial." (D.I. 55 at 3.) But, as explained above, Nielsen's argument depends on ignoring the vast majority of the allegations in TVision's counterclaims, which allege Nielsen has violated the antitrust laws by protecting its monopoly in ways entirely separate from its actions in any patent lawsuit. Moreover, while courts recognize that "litigation costs money, . . . this type of economic harm usually does not constitute the type of 'undue hardship' relevant under this prong." *Inari Med., Inc. v. Inquist Med. Inc.*, 2025 WL 637958, at *4 (D. Del. Feb. 27, 2025) (citation omitted); *see Mahfouz v. DePuy Synthes Prods.*, 2025 WL 3698181, at *3 (D. Del. Dec. 19, 2023) ("the financial hardship suffered by Defendant in proceeding with discovery is not sufficient to warrant a stay in this case. . . . This is especially true where, as here, Defendant is a company of substantial means").

Nothing will be gained from indefinitely staying the resolution of TVision's antitrust claims, which raise serious issues under the antitrust laws. For the reasons set forth above, a stay is not warranted, and Nielsen's motion should be denied.

---

[6] TVision alleges that, despite its intent to compete directly with Nielsen, it has been blocked from doing so by Nielsen's exclusionary tactics. For example, TVision asserts: "Given the superiority of TVision's prices and product (including its ability to offer measurements of audience attention that Nielsen simply cannot), a substantial number of these locked-up customers would have switched to TVision's TV audience measurement services, or at least supplemented Nielsen's data with TVision's data, absent Nielsen's exclusionary contracting practices." (D.I. 30 ¶ 182.)

Respectfully submitted,

*/s/ Andrew E. Russell*

Andrew E. Russell (No. 5382)

cc: Clerk of Court (by CM/ECF & Hand Delivery)
All Counsel of Record (by CM/ECF & Email)