**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | C.A. No. 25-575-CJB |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM DAVID E. MOORE, ESQ. REGARDING NIELSEN'S MOTION TO STAY**


OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason Greenhut
Matthew Kennison
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew M. Moshos (#6685)
Malisa C. Dang (#7187)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
amoshos@potteranderson.com
mdang@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*


Dated: February 6, 2026
12691577 / 14944.00011

PUBLIC VERSION
Dated: February 13, 2026

Dear Judge Burke:

Nielsen respectfully requests that the Court stay TVision's antitrust counterclaims pending resolution of the patent litigations underlying the sham litigation claims (including the patent claims in the present case, and in Case Nos. 22-0057 and 22-1345).[1] A Nielsen win in the patent suits would dispose of the sham litigation allegations and simplify the antitrust issues in the case. Thus, litigating the case's antitrust issues before the underlying patent disputes are resolved would be inefficient and waste party and judicial resources. The early status of this litigation, paired with the lack of prejudice to TVision if a stay is imposed—and the certain prejudice to Nielsen in the absence of stay—strongly favors a stay.

**Legal Standard**

"District courts have properly exercised [their] discretion through the 'standard practice' of separating patent issues from related antitrust issues." *Eurand Inc. v. Mylan Pharms. Inc.*, C.A. No. 08-889-SLR, 2009 WL 3172197, at *1 (D. Del. Oct. 1, 2009) (citing *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed.Cir.1986)). "Courts in this district have on many occasions followed this practice and stayed sham-litigation-based claims while addressing the related patent infringement claims." *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, C.A. No. 23-675-WCB, 2024 WL 639991, at *5 (D. Del. Feb. 15, 2024) (collecting cases).

In deciding whether to stay a case or part of a case, courts consider (1) whether granting the stay will simplify the issues for trial, (2) the status of the litigation, (3) whether a stay would cause the non-movant to suffer undue prejudice, and (4) whether the absence of a stay would burden the moving party. *See Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014).

**A Stay Would Simplify the Issues For Trial**

A stay will dramatically simplify the case by narrowing or even eliminating antitrust issues. As courts in this District have observed, "it is likely that resolution of the patent infringement claim will significantly simplify the claims arising from the sham litigation allegation and may even moot those claims altogether." *DSM*, 2024 WL 639991, at *5*; see also Apotex, Inc. v. Senju Pharm. Co., Ltd.*, 921 F. Supp. 2d 308, 315 (D. Del. 2013) (finding that a stay "could eliminate or narrow some of the antitrust claims and prevent unnecessary expenditure of time and resources"); *Shoulder Innovations, Inc. v. Catalyst OrthoScience Inc.*, C.A. No. 24-266-JPM, 2024 WL 5704496, at *3 (D. Del. Dec. 19, 2024) (same); *Eagle Pharms., Inc. v. Eli Lilly & Co.*, C.A. No. 18-1121-MSG, 2018 WL 6201704, at *3 (D. Del. Nov. 27, 2018) (same); *Eurand Inc.*, 2009 WL 3172197, at *2 (same); *Masimo Corp. v. Philips Elecs. N.A. Corp.*, C.A. No. 09-80-JJF-MPT, 2010 WL 925864, at *3–4 (D. Del. Mar. 11, 2010) (same).

The same rationale applies here. Three of the five patent cases upon which TVision bases its antitrust claims—including the patent claims in the present case—remain unresolved. In Case

---

[1] Nielsen recently filed a motion to dismiss TVision's counterclaims for failure to state a claim. D.I. 49. If the Court grants Nielsen's motion to dismiss, Nielsen's relief requested herein would become moot.

No. 22-0057, the parties have just completed summary judgment briefing, and the case is set to be tried in June of this year. In Case No. 22-1345, the IPR has been appealed to the Federal Circuit Court of Appeals. And in the instant case, discovery has just begun. A finding of infringement in these cases "would effectively dispose of any claim that the infringement theory was baseless." *DSM*, 2024 WL 639991, at *5. Even short of such a finding, their outcomes would still "shed light on allegations of sham litigation." *See Apotex*, 921 F. Supp. 2d at 314.

Another consideration supports a stay. TVision must still prove all other substantive elements of its antitrust claims, including relevant market, market power, antitrust injury, and anticompetitive conduct. *See Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61, 113 S. Ct. 1920, 1928, 123 L. Ed. 2d 611 (1993) ("Proof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim."). These issues are "largely, if not totally, irrelevant to discerning the existence of patent infringement." *Eurand*, 2009 WL 3172197, at *2. *See also Orthophoenix, LLC v. Dfine, Inc.*, C.A. No. 13-1003-LPS, 2015 WL 1938702, at *1 (D. Del. Apr. 28, 2015) ("absent a stay, a trial of patent infringement, patent validity, *and* antitrust issues before the same jury may lead to jury confusion") (emphasis in original); *DSM*, 2024 WL 639991, at *6 ("staying the antitrust and unfair competition counterclaims … is clearly preferable to attempting to adjudicate both the infringement claim and the counterclaims at the same time and, potentially, before the same jury"); *Eagle Pharms.*, 2018 WL 6201704, at *3 ("resolving the patent action before the antitrust action makes sense, and will also avoid possible inconsistent results by different fact-finders") (internal citation omitted).

**<u>The Status of the Litigation Favors a Stay</u>**

The fact that this case is in its very early stages favors a stay. TVision filed its counterclaim in this case on November 10, 2025, and discovery is just getting underway. Moreover, trial is not until November 15, 2027. Courts in this District facing similar circumstances have held that such an early posture of a case "weighs in favor of a stay." *Inari Med., Inc. v. Inquis Med., Inc.*, C.A. No. 24-1023-CFC-EGT, 2025 WL 637958, at *2 (D. Del. Feb. 27, 2025); *see also Shoulder Innovations*, 2024 WL 5704496, at *3 (finding that it was "still months until the end of fact discovery" and "[d]ue to the far-off nature of the trial and the ongoing nature of discovery, this factor weighs in favor of bifurcating and staying" the counterclaim).

**<u>A Stay Will Not Prejudice TVision, but Denying One Will Prejudice Nielsen</u>**

TVision will suffer no prejudice from a stay. First and foremost, TVision has repeatedly maintained it does not directly compete with Nielsen. TVision's CEO previously submitted a declaration in which he stated "[redacted]," the very same market TVision alleges to be at issue in its antitrust counterclaim. Case No. 22-1345, D.I. 96 at 12. TVision does not contend, and cannot show, that any material change in the market or its product offerings has occurred that would alter its longstanding position that the parties do not directly compete. TVision has also previously assured the Court that because Nielsen "is not a direct competitor of TVision," Nielsen "would not be unduly prejudiced by a stay." *Id.*, D.I. 87 at 4. Thus, TVision will not be prejudiced by a stay here, either. *See Ever Win Int'l Corp. v.*

*Radioshack Corp.*, 902 F. Supp. 2d 503, 510 (D. Del. 2012) (Burke, J.) (finding stay pending patent reexamination warranted because "other than [plaintiff's] unsupported allegation that it directly competes with [defendant], there is no real evidence that the parties compete in the same market"). Second, TVision voluntarily dismissed its antitrust counterclaims in Case No. 22-1345—which it filed over two years ago—and chose to restart them here, now packaging them with newly asserted theories of antitrust harm that it should have (but chose not to) assert in that case. Having voluntarily imposed a substantial delay of resolution of its antitrust claims, TVision cannot credibly complain about any prejudicial delay in this case.

Permitting the antitrust claim to proceed before the underlying patent litigations are resolved would significantly prejudice Nielsen, however. As this Court has observed, "antitrust litigation surely holds the potential for enormously costly and time-consuming discovery." *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 149–50 (D. Del. 2019) (Burke, J.) (internal quotations and citation omitted). "And allowing discovery relating to the antitrust counterclaim to go forward at this juncture would add significantly to the expense and delay in resolving the action, given the complexity typically associated with antitrust discovery." *DSM*, 2024 WL 639991, at *6; *see also Eagle Pharms.*, 2018 WL 6201704, at *3 ("courts have recognized [antitrust discovery] can be 'voluminous, time-consuming, and expensive'") (internal citation omitted). Requiring a party to engage in such time-consuming, expensive discovery, when that discovery ultimately may not be necessary, is unduly prejudicial. *See id.*

The above concerns are present here. TVision has already served 144 initial document requests (attached as Exhibit A)—approximately half directed at its antitrust theories—seeking sweeping categories of documents. For example, TVision's Request No. 36 demands all documents "concerning Nielsen's negotiation of, analysis of, interpretation of, implementation of, advisability of, motivation for entering into, or strategies regarding contracts or agreements for the provision of TV Audience Measurement Services" from January 1, 2017 to the present. (Ex. A, at 18.) This single request alone, construed literally, captures every document reflecting any negotiation, strategy, or motivation for entering most contracts with Nielsen customers for nearly a decade. TVision has also served sweeping requests seeking plainly privileged materials—including from Nielsen's CEO and others in high-ranking company positions—such as "[d]ocuments concerning Nielsen's decisions to file, and if applicable, settle or dismiss each of the Nielsen-TVision Matters, including the timing of each lawsuit filed or considered," "documents concerning Nielsen's pre-filing investigations for each of the Nielsen-TVision Matters," and even documents concerning patent infringement litigation against unrelated third parties. (Ex. A, at 31, Request Nos. 130–132.) These overbroad and disproportionate requests would expose privileged materials to expansive discovery demands and require extensive—and costly—privilege review, logging, and likely motion practice.

In light of the above, Nielsen respectfully requests that the Court grant its motion and stay TVision's antitrust counterclaims until the underlying patent litigations are concluded.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:rms/12691577/14944.00011

cc: Clerk of the Court (via hand delivery)
Counsel of Record (via electronic mail)

PUBLIC VERSION
February 13, 2026