# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC,<br><br>Plaintiff,<br><br>v.<br><br>TVISION INSIGHTS, INC.,<br><br>Defendant. | ) | C.A. No. 25-575-CJB |
| TVISION INSIGHTS, INC.,<br><br>Counter-Plaintiff,<br><br>v.<br><br>THE NIELSEN COMPANY (US), LLC,<br><br>Counter-Defendant. | ) | |

**DEFENDANT AND COUNTER-PLAINTIFF TVISION INSIGHTS, INC.'S**
**FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware, Defendant and Counter-Plaintiff TVision Insights, Inc. requests that Plaintiff and Counter-Defendant The Nielsen Company (US), LLC produce for inspection and copying all documents and things requested below within 30 days or as otherwise required by the Court. A copy of Your objections and responses to this first set of Requests for Production of Documents ("Requests") must be served on Andrew E. Russell, Shaw Keller LLP, I.M. Pei Building, 1105 North Market Street, 12th Floor, Wilmington, DE 19801, within thirty days after service thereof. These Requests are continuing in nature and responses thereto should be supplemented as required by Rule 26(e) of the Federal Rules of Civil Procedure.

# DEFINITIONS

## General Definitions

Except as specifically defined below, terms used in the following Requests will be construed in accordance with the definitions provided in the Federal Rules of Civil Procedure, or their plain and ordinary meaning, wherever applicable. As used in these Requests, the following words and phrases are defined as follows and the definitions shall apply whether or not the terms are capitalized in the Requests:

1. "You," "Your," "Plaintiff," "Counter-Defendant," or "Nielsen" mean The Nielsen Company (US), LLC, any parent entities, subsidiary entities, affiliated entities, special purpose entities, entities with whom Nielsen has a joint marketing relationship, entities from whom Nielsen has purchased any interest in receivables, predecessor entities, and all of its past and present officers, directors, agents, employees, contractors, subcontractors, consultants, attorneys, law firms, affiliates, and other Persons engaged directly or indirectly (e.g., an employee of a consultant) by or under the control of Nielsen.

2. "Defendant," "Counter-Plaintiff," or "TVision" means TVision Insights, Inc. and its predecessors-in-interest, officers, directors, agents, employees, and others acting on behalf of TVision.

3. "Document" means written, recorded and graphic material of every kind, including all Electronically Stored Information, data (structured or otherwise), or information in any tangible form, including but not limited to the original and any non-identical copy (which is different from the original because of notations on such copy or otherwise) of any documentary material, together with any attachments thereto or enclosures therewith, including but not limited to: Communication; correspondence; e-mails and all attachments and enclosures thereto; records;

reports; contracts (including drafts, proposals, and any and all exhibits thereto); agreements; memoranda (including inter- and intra-office memoranda, and memoranda for file); and data and Documents maintained or transmitted by Nielsen or to Nielsen, including electronically. "Documents" include the metadata or labels associated with each original or copy. "Document" also includes: (i) documentary material that exists physically in hard copy form and (ii) documentary material no matter how any such Document is stored, maintained or organized, including but not limited to electronically, digitally or magnetically through computer or other electronic, network, or cloud-based storage equipment or media.

4. "Communication" means any means of disclosure, transfer, exchange, or transmittal of information, whether oral or written, whether handwritten, typewritten, tape-recorded, or produced by electronic data processing, regardless of how conveyed (e.g., telephone, e-mail, text message, Slack, Teams Chat, Google Chat, Zoom Chat, U.S. mail, private mail, personal delivery or courier service, facsimile transmittal, face-to-face contact or otherwise), including but not limited to: inquiries, discussions, conversations, negotiations, agreements, reports, understandings, meetings, telephone conversations, letters, notes, telegrams, advertisements, or other forms of communication, whether oral or written.

5. "Structured Data" means any electronic data that resides in a fixed field within a record or file, such as data stored in Oracle, SQL, or files that are in Columns/Rows or a fixed field with a predefined format.

6. "Electronically Stored Information," or "ESI," means the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise) of any electronically created or stored information, including but not limited to e-mail, instant messaging, videoconferencing, SMS, MMS, Slack, Teams Chat, Google Chat, Zoom

Chat, or other text messaging, and other electronic correspondence (whether active, archived, unsent, or in a sent or deleted-items folder), word-processing files, spreadsheets, databases, unorganized data, document metadata, presentation files, and sound recordings, regardless of how or where the information is stored, including if it is on a mobile device.

7. "Identify," when used in reference to a natural person, means to produce documents sufficient to identify: the person's full name; last known business and home address; date of birth; title or position and period of service in each such position; immediate supervisor in each position; business and home telephone numbers (including voice, cellular, and facsimile phone numbers) assigned to or used by such person and the period during which such numbers were assigned to be used by that person; and business and home electronic mail identifiers and the period during which such identifiers were assigned to and used by that person.

8. "Identify," when used in reference to a business, corporation, partnership, limited liability company, or other legal entity, means to produce documents sufficient to identify: the full legal name; any former names and any trade or fictitious name; the form of the entity; the state of incorporation or organization; and the address of its principal place of business.

9. "Person" means any natural person or any business, legal, or governmental entity or association.

10. The terms "regarding," "relating," "reflecting," and "concerning" mean to discuss, describe, refer to, reflect, contain, analyze, study, report on, comment on, evidence, constitute, set forth, consider, recommend, concern, relate to, or pertain to, in whole or in part.

11. The words "and/or," "or," and "and" shall be used disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope. As such, "and/or," "or," and "and" should be construed so as to require

the broadest possible response. If, for example, a request calls for information about "A or B" or "A and B," You should produce all information about A and all information about B, as well as all information about A and B collectively.

12. The words "any," "each," and "all" are to be construed as to be synonymous so as to bring within the scope of the discovery requests the broadest range of Documents. "All" means "any and all;" "any" means "any and all."

13. As used in these Requests, the singular is to be treated as plural and vice versa. The present tense includes the past and future tenses. The singular includes the plural and the plural includes the singular. "Including" means "including but not limited to." Words in the masculine, feminine, or neutral form shall include any and all other genders.

**Specific Definitions**

1. "'189 Patent" means U.S. Patent No. 9,020,189.

2. "'120 Patent" means U.S. Patent No. 8,302,120.

3. "'889 Patent" means U.S. Patent No. 7,783,889.

4. "'243 Patent" means U.S. Patent No. 11,470,243.

5. "'030 Patent" means U.S. Patent No. 11,798,030.

6. "'642 Patent" or "Asserted Patent" means U.S. Patent No. 12,047,642.

7. "Patents-in-Suit" means all U.S. Patents asserted by Nielsen against TVision in any lawsuit filed by Nielsen against TVision, including: the '189 Patent, the '120 Patent, the '889 Patent, the '243 Patent, the '030 Patent, and the '642 Patent.

8. "Nielsen-TVision Matters" means any patent infringement action initiated by Nielsen against TVision, including:

a. *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, No. 21-cv-1592 (D. Del.);

b. *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, No. 21-cv-57 (D. Del.);

c. *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, No. 22-cv-1345 (D. Del.);

d. *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, No. 23-cv-1346 (D. Del.); and

e. *Nielsen Co. (US), LLC v. TVision, Insights, Inc.*, No. 25-cv-575 (D. Del.).

9. "ACR" means technology generally referred to as automatic content recognition.

10. "Connected TV" mean programs made available through streaming services that have the capability to use targeted advertisements.

11. "Linear TV" means broadcast television, ad-supported cable television, and streaming services that use common, rather than targeted advertisements.

12. "TV Audience Measurement Services" means a product whereby customers (e.g., content publishers, broadcasters, television networks, cable television operators, streaming providers, advertisers, advertising agencies, media sales representatives) pay a fee to receive periodic information about TV viewership and engagement, which may include detailed data on the number of people who watched a show, the demographic and geographic breakdowns of the audiences, and similar information. TV Audience Measurement Services include the products, information, and data on all types of television programming, including programs on "Linear TV" and "Connected TV."

13. "USPTO" means the United States Patent and Trademark Office.

14. "Complaint" refers to the complaint filed in the above-captioned action (D.I. 1) and any subsequently filed amended complaints.

15. "Accused Product(s)" refers to any product of TVision that You contend infringed any claim of the Asserted Patent, including any TVision product identified in any Complaint or in

any infringement contentions (including without limitation Your Initial Infringement Claim Charts and Contentions), and any permitted amendments or supplementations thereto.

16. "Asserted Technology" refers to any products, devices, systems or methods that perform audience measurement that counts, or enables the detection, identification, or other measurement of associated streaming content. "Enables the detection, identification, or other measurement of streaming content" (or the like) as used herein includes, but is not limited to: (1) recognizing that a device is streaming media, (2) identifying the specific streaming application that is active, (3) storing an identifier of the streaming application, and/or (4) transmitting the identifier of the streaming application."

17. The term "Named Inventor(s)" shall mean any inventor named on the Asserted Patent, including but not limited to Joseph Kerkes.

18. The term "Practicing Products" means any and all products or services designed, tested, manufactured, used, distributed, licensed, leased, sold, offered for sale, provided, or marketed by You that You contend practice any claim in any of the Asserted Patent.

19. The term "prior art" means the subject matter described in 35 U.S.C. §§ 102 and 103, including without limitation publications, patents, physical devices, prototypes, uses, know-how, sales, offers for sale, and any documents or things evidencing any of the foregoing.

20. The term "related application" means any and all applications related to the Asserted Patent, including all provisional or non-provisional applications, continuations, continuations-in-part, divisions, interferences, reexaminations, reissues, parents, foreign counterpart applications, or any other applications disclosing, describing, or claiming any subject matter described in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether pending, issued, or abandoned.

21. The term "related patent" means any and all patents based upon or issuing from any related application, including any patents that may have been reexamined, reissued or subject to any inter partes review or other proceeding before the Patent Trial and Appeal Board.

22. The terms "infringe" and "infringement" mean direct infringement, contributory infringement, infringement by inducement, literal infringement, and infringement under the doctrine of equivalents.

23. The term "source code" means computer code instructions, data structures, and data definitions expressed in a form suitable for input to an assembler, compiler, translator, or other data processing module, and associated comments and revision histories.

24. The term "technical documents" means all technical documents, including without limitation user manuals and guides, installation manuals and guides, reference manuals and guides, data sheets, technical documentation, technical presentations, schematics, specifications, architecture descriptions, release notes, readme files, source code, executable code, engineering notebooks, workbooks, diagrams, blueprints, sketches, flow charts, design requirements, design reviews, bug reports, project plans and papers, test reports, throughput analysis, troubleshooting guides, and bills of materials.

# INSTRUCTIONS

1. The requests set forth in the numbered Requests below call for the production of all responsive, non-privileged Documents to the extent that such Documents are within Your possession, custody, or control and can be located and produced after a reasonable search and without undue burden or expense, in accordance with the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware.

2. The terms defined above and the individual Requests are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure and the Local Rules of the District of Delaware.

3. All Documents are to be produced in full, with attachments. If any part of a Document or a Document's attachment is responsive to any Request, the whole Document, including all attachments, must be produced. Non-responsive portions of responsive Documents may not be redacted.

4. Requests for a Document include Requests for any prior draft or versions of that Document, and all such drafts or versions shall be produced.

5. Any alteration of a responsive Document, including notes (handwritten or electronic), underlining, highlighting, stamps, revisions, modifications, or other versions of a final Document, is a separate Document and is to be produced as a separate Document.

6. All Documents shall be produced, in accordance with Federal Rule of Civil Procedure 34(b): (a) as they are kept in the usual course of business, with sufficient information to allow TVision to understand how they were organized, including, where available, the source, path, or location at which the Document was maintained, the author, the custodian, the date sent,

the date created, the date last modified; or (b) in a manner such that they are organized and labeled to correspond with these requests.

7. All Documents are to be produced with the file folder, envelope, binder, or other container in which the Documents are maintained. If, for any reason, the container cannot be produced, copies of all labels or other identifying marks are to be produced instead.

8. All Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found and the business address/location of each Document's custodian(s).

9. If a Document is in a language other than English and an English translation exists, produce both Documents.

10. If Nielsen refuses any portion of a Request, the grounds for each refusal must be fully stated. If the refusal pertains to only part of an item or category of items, the relevant portion must be specified. If Nielsen's refusal relates to the form in which ESI is requested, Nielsen must specify in which form Nielsen would produce the information.

11. If Nielsen objects to any portion of a Request based on a claim of privilege, immunity, or other ground, or if Nielsen withholds any Document from production based on a claim of privilege, immunity, or other ground, Nielsen must furnish a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5) and the Local Rules of the District of Delaware. If any Document is withheld or redacted for one or more of these reasons, Nielsen must identify and appropriately log the reason for the withholding or redaction, along with all information necessary for TVision to assess any claim of privilege or work-product protection.

12. Any purportedly privileged Document containing non-privileged material must be produced, redacting only the portion purportedly privileged.

13. If any responsive Document was, but no longer is, in Nielsen's possession, custody, or control, produce a description of each such Document. The description shall include the following:

a. the name of each author, sender, creator, or initiator of such Document;

b. the name of each recipient, addressee, or party for whom such Document was intended;

c. the date the Document was created;

d. the date(s) the Document was in use;

e. a detailed description of the contents of the Document;

f. the reason it is no longer in Nielsen's possession, custody, or control; and

g. the Document's current location.

If the Document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the Document was destroyed or otherwise disposed of, and the date and manner of the disposal.

14. Documents shall be produced in the following searchable electronic format that can be loaded into a document review program: single-page Tagged Image Format files (.tiff), an index file containing all relevant available metadata, and all file, record, instructions, codes, or other information necessary to retrieve or interpret the data. If any portion of Nielsen's production consists of ESI and cannot be easily converted in the above format, those Documents, which include Excel and PowerPoint documents, should be produced in their native format. You should take reasonable steps to maintain any responsive ESI in its original native format. For responsive information contained in databases, produce the database in its native format as well as converted

into Excel spreadsheet format (.xls), or if not possible, a comma separated text file (.csv) format unless otherwise requested. Regardless of the format of production, all Documents must be marked with a unique control number (i.e., Bates stamp). Responsive Documents shall also be accompanied by an index that identifies: (i) the name of the custodian of the Document; (ii) the full Bates range for that Document; and (iii) the format of the original Document (such as hardcopy, email, electronic Document, etc.).

15. Each production should be accompanied by a cover letter setting out the Bates range for the production, a list of each piece of media included in the production, and an updated Document index required by the prior paragraph. If any responsive Document is available or maintained in electronic format, the Document shall be provided in electronic format. Electronic Documents shall be produced in a format that maintains all metadata, and shall include all file, record, instructions, codes, or other information necessary to retrieve and interpret the data.

16. All Documents or other data which concern or relate to the subject-matter of this case or these Requests must be preserved. Any destruction involving such Documents must cease, even if it is Nielsen's normal or routine course of business to delete or destroy such Documents or data, and even if Nielsen believes that such Documents or data are privileged or otherwise need not be produced.

17. When Structured Data is requested, if Nielsen is unable to produce Structured Data but does possess summary or unstructured data, the summary or unstructured data should be produced.

18. These Requests are continuing, and any Document discovered or obtained after the service of these Requests is to be produced promptly after it is discovered or obtained.

## RELEVANT TIME PERIOD

Unless otherwise noted herein, the relevant time period of the document requests is January 1, 2017 to the present (the "Relevant Time Period"). These document requests seek responsive Documents created or generated during the Relevant Time Period, as well as responsive Documents created or generated outside the Relevant Time Period, but which contain information concerning the Relevant Time Period.

## REQUESTS

1. For each year during the Relevant Time Period, Documents sufficient to show Nielsen's organizational structure, including organizational charts, directories, and/or personnel lists that include Nielsen's officers and directors and sales, marketing, market intelligence, market research, business development, product development, product strategy, finance, customer service, engineering, research and development, product testing, and licensing employees, as well as the corporate structure of Nielsen's divisions, departments, parents, subsidiaries, and/or affiliates.

2. For each year during the Relevant Time Period, Documents sufficient to Identify all former and current Nielsen employees reasonably likely to possess Documents responsive to these Requests.

3. Documents concerning the market for TV Audience Measurement Services or the measurement of TV viewership, including Connected TV and Linear TV.

4. Documents concerning any market research concerning TV Audience Measurement Services or the measurement of TV viewership, including Connected TV and Linear TV.

5. Documents concerning competition, market segments, market share, or market revenue (whether actual or projected) concerning TV Audience Measurement Services or the measurement of TV viewership, including Connected TV and Linear TV.

6. Documents concerning Nielsen's business strategies for competing for the provision of TV Audience Measurement Services.

7. Documents concerning Nielsen's analysis of its share or position in any market, marketplace, or product concerning TV Audience Measurement Services or the measurement of TV viewership, including Connected TV and Linear TV.

8. Documents referring to Nielsen as a "monopolist" or having a "monopoly" in any market, marketplace, or product concerning TV Audience Measurement Services or the measurement of TV viewership, including Connected TV and Linear TV.

9. Documents discussing or referring to any article, news report, or statement on traditional or social media asserting that Nielsen is a "monopolist" or has a "monopoly" in any market, marketplace, or product concerning TV Audience Measurement Services or the measurement of TV viewership, including Connected TV and Linear TV.

10. Documents sufficient to Identify every entity that Nielsen considers a competitor for the provision of TV Audience Measurement Services.

11. Documents concerning Nielsen's actual or potential competitors (e.g., TVision, Comscore, VideoAmp, iSpot.tv) and competing products or services for the provision of TV Audience Measurement Services.

12. Documents concerning analysis or forecasts of supply, demand, or pricing for the provision of TV Audience Measurement Services.

13. Documents sufficient to show and describe the technical operation and design of Nielsen's TV Audience Measurement Services.

14. Documents sufficient to show all calibration data used by and/or associated with Nielsen's TV Audience Measurement Services.

15. Documents relating to formal or informal complaints, critiques, comments, or feedback from Nielsen's customers or contractual partners concerning the price or quality of Nielsen's TV Audience Measurement Services.

16. Documents relating to formal or informal complaints, critiques, comments, or feedback from Nielsen's customers, contractual partners, or Nielsen's panelists concerning Nielsen's panel technology.

17. Documents and Structured Data concerning Nielsen's profit-and-loss statements, balance sheets, and the accounting or auditing of financial results.

18. Documents sufficient to show the production, manufacturing, marketing, service, and promotion costs of Nielsen's TV Audience Measurement Services during the Relevant Time Period.

19. Documents sufficient to explain all acronyms, abbreviations and short form of labels used in Your financial, sales and marketing documents.

20. Documents relating to any communications, meetings, calls, or videoconferences between Nielsen and employees or representatives of TVision, Comscore, VideoAmp, iSpot.tv, HyphaMetrics, ACRCloud, Adelaide, Innovid, or any other provider of products, data, or technology relating to TV Audience Measurement Services.

21. Documents concerning TVision, including but not limited to:

(a) Communications with or mentioning TVision;

(b) Contracts or agreements mentioning TVision;

(c) Documents concerning Nielsen's evaluation of TVision's customers, panel data, products, offerings, or technology;

(d) Documents concerning Nielsen's strategy or efforts to compete against TVision, limit TVision's sales, growth, or profits, or weaken TVision as a competitor;

(e) Documents concerning Nielsen's expectations regarding TVision's growth or potential growth;

(f) Documents concerning TVision's TV Audience Measurement Services;

(g) Documents concerning TVision's in-home meter provided to TVision's panelists; and

(h) Communications about use of TVision's data with Nielsen's, including in the circumstance where TVision's data is offered to the end user or potential end user by another company, such as VideoAmp.

22. Documents, including communications, analyses, or presentations, concerning any strategies, tactics, programs, plans, or policies contemplated, whether implemented or not, to be considered, employed, or executed in response to TVision, in whole or in part, in any market segment.

23. Documents concerning Nielsen's contracting policies and practices for the provision of TV Audience Measurement Services.

24. Documents relating to any policies, practices, contractual terms, or agreements concerning Your customers' or contractual partners' permissible use of data, products, or information related to TV Audience Measurement Services provided by Nielsen.

25. Documents relating to any policies, practices, contractual terms, or agreements concerning Your customers' or contractual partners' use of data, products, or information related to TV Audience Measurement Services obtained directly or indirectly from any party other than Nielsen, including data, products, or information obtained directly or indirectly from TVision.

26. Documents discussing or referring to the purpose or actual or anticipated effects of any terms in Your contracts concerning the commingling or simultaneous use of Nielsen data and any data obtained directly or indirectly from any party other than Nielsen.

27. Documents relating to any policies, practices, contract terms, or agreements concerning payments or fees by Your customers or contractual partners for the use of data, products, or information related to TV Audience Measurement Services obtained directly or indirectly from any party other than Nielsen, including data, products, or information obtained directly or indirectly from TVision.

28. Documents relating to any policies, practices, contract terms, or agreements concerning the limitation or removal of Your customers' or contractual partners' access to data, products, or information provided by Nielsen related to TV Audience Measurement Services, in the event of contract suspension, non-renewal, or termination.

29. Documents relating to any policies, practices, contract terms, or agreements that require Your customers or contractual partners to destroy products, data, or information provided by Nielsen that are related to TV Audience Measurement Services, in their possession in the event of contract suspension, non-renewal, or termination.

30. Documents relating to the suspension or removal of Your customers or contractual partners (or any data or information about such customers or partners) from any data, products, or other offerings related to TV Audience Measurement Services, in the event of contract suspension, non-renewal, or termination.

31. Documents relating to the contract term, length, non-renewal, and termination provisions for any contracts or agreements that relate to the provision of TV Audience Measurement Services.

32. Documents related to the staggering of Your contracts or agreements that relate to the provision of TV Audience Measurement Services.

33. All final and draft versions of the Nielsen Marketplace Services Agreement or similar agreements. *See* https://www.nielsen.com/nielsen-marketplace-services-agreement/.

34. Documents concerning potential revisions or amendments, whether implemented or not, to the Nielsen Marketplace Services Agreement or similar agreements.

35. All Documents constituting Nielsen's final and draft contracts or agreements for the provision of TV Audience Measurement Services, entered into or effective from January 1, 2017 to the present.

36. Documents concerning Nielsen's negotiation of, analysis of, interpretation of, implementation of, advisability of, motivation for entering into, or strategies regarding contracts or agreements for the provision of TV Audience Measurement Services.

37. Documents concerning the contractual negotiations between Nielsen and Paramount and its affiliates in or around October 2024.

38. Documents concerning Nielsen's acquisition of Gracenote.

39. Documents concerning Gracenote's refusal to renew TVision's license for Gracenote's ACR technology.

40. Documents concerning the contractual negotiations between Nielsen and Adelaide and its affiliates.

41. Documents relating to any decision to limit or prohibit Your customers from using data or information obtained directly or indirectly from TVision.

42. Documents relating to any decision to charge Your customers additional fees for using data or information obtained directly or indirectly from TVision.

43. All documents cited or referred to in the summary judgment briefing in *Sunbeam Television Corp. v. Nielsen Media Research, Inc.*, Case No. 09-cv-60637–CIV (S.D. Fla.).

44. All documents cited or referred to in the appellate briefing in *Sunbeam Television Corp. v. Nielsen Media Research, Inc*., No. 11–10901 (11th Cir.).

45. All documents cited or referred to in the summary judgment briefing in *Erinmedia, LLC v. Nielsen Media Research, Inc*, Case No. 8:05-cv-1123-T-24-EAJ (M.D. Fla.).

46. Structured Data relating to contracts and agreements to which You are a party that govern the provision of TV Audience Measurement Services, including but not limited to Structured Data from any contract management database or software.

47. Structured Data demonstrating the prices You have charged for TV Audience Measurement Services over the Relevant Time Period.

48. Documents discussing prices or price trends relating to the provision of TV Audience Measurement Services.

49. Documents and Structured Data concerning Your profits and profit margins concerning the provision of TV Audience Measurement Services.

50. Documents discussing trends in profits or profit margins in Your business.

51. Documents concerning the Asserted Patent or any subject matter of the Asserted Patent.

52. Documents relating to, identified in, and/or relevant to any related patent, or related application.

53. Documents concerning the preparation, prosecution, examination, and/or maintenance of the Asserted Patent, including but not limited to: (a) draft patent applications, (b) file histories, (c) correspondence, (d) prior art, (e) documents evidencing any decision as to what

information to disclose or not disclose to the United States Patent and Trademark Office ("PTO") or any foreign patent office, (f) files of any attorney or patent agent involved in the prosecution of the Patents-in-Suit, and (g) documents reflecting any communication, meeting, or contact with the PTO or any foreign patent office concerning the Asserted Patent, any related patents, or related applications, including all office actions and responses thereto.

54. All U.S. and foreign patents, printed publications, systems, products, or physical devices, provided to, received from, or identified to or by prosecution counsel for or during the preparation and prosecution of the Asserted Patent, any related patents, or related applications.

55. Documents, including without limitation all technical documents, relating to the conception, reduction to practice, research, design, development, or testing of the inventions or subject matters claimed in any of the Asserted Patent, any related patent, or related application, including, but not limited to, the first written description or disclosure (including drawings, mathematical calculations, or code) and the first prototype of such subject matter.

56. Documents reflecting or relating to any efforts to obtain patent protection on any invention related to the subject matter claimed in the Asserted Patent, including without limitation any amount paid by You to obtain any Asserted Patent, and any related patent, or related application.

57. Documents constituting, relating to, or reflecting any agreement between You or Your counsel and any of the inventors of the Asserted Patent, including, but not limited to, any employment agreement, consulting agreement, confidentiality agreement, assignment, license, or any agreement entered into in connection with this action or any other actual or potential legal action.

58. Documents relating to or reflecting the chain of ownership of the Asserted Patent, including, but not limited to, all assignments or transfers of ownership relating to the Asserted Patent or the applications resulting in the Asserted Patent.

59. Documents referring or relating to the inventorship of any invention described, disclosed or claimed in the Asserted Patent, including, but not limited to, documents relating to the identity of any person considered for inclusion as an inventor and the contribution of each person involved in the conception, development, or reduction to practice of the subject matters claimed as an invention in the Asserted Patent.

60. All published or unpublished articles, papers, manuscripts, technical reports, conference papers, presentations, grant requests, or other publications authored, co-authored, written, or co-written by any of the Named Inventors, or by any other employee, agent, or representative of Yours, relating to the Asserted Technology, Asserted Patent, patent applications, license agreements, or this action.

61. Documents relating to the decision of any of the Named Inventors, or any other employee, agent, or representative of Yours, to submit any prior art or information disclosure statement (IDS) during the prosecution of the Asserted Patent and counterparts thereof.

62. Documents relating to the work that any of the Named Inventors performed for You prior to issuance of any of the Asserted Patent.

63. All patents or other publications that were reviewed or received by a person involved with the prosecution of the Asserted Patent and which were considered in relationship to the applications resulting in the Asserted Patent.

64. All patents or other publications that were reviewed or received by a person involved with the prosecution of any related patent or related application and which were considered in relationship to the applications resulting in any related patent or related application.

65. Documents reflecting or relating to any priority date to which You contend the Asserted Patent are entitled.

66. Documents regarding any current or prior ownership of the Asserted Patent, including documents sufficient to show the identity of each Person involved in the transfer of ownership and to describe each Person's involvement, and all agreements reflecting or otherwise relating to such transfer.

67. Documents relating to any financial interest in or to this litigation by any Person, including documents sufficient to Identify all persons with such a financial interest, and the nature of such financial interest.

68. Documents relating to or reflecting any disclosure of the alleged inventions of any of the Asserted Patent prior to the filing date of such patent, including any disclosure covered by a confidentiality agreement.

69. Documents relating to or reflecting any formal, informal, written, or oral studies, analyses, opinions, investigations or reports directed to the scope of patentability, validity, enforceability, or infringement concerning the subject matter disclosed, described, or claimed in any of the Asserted Patent, including without limitation evaluations, searches, or search results of domestic or foreign patents, literature, or other published materials relating in any manner to the Asserted Patent.

70. Documents relating to or reflecting the manners or techniques by which any of the alleged inventions claimed in any of the Asserted Patent allegedly improved upon or otherwise differed from the prior art.

71. Documents relating to or reflecting any secondary considerations of non-obviousness of any of the alleged inventions claimed in any of the Asserted Patent, including but not limited to, commercial success, long-felt need, attempts by others, failure of others, commercial acquiescence, licensing, professional approval, copying, or laudatory statements by others regarding the inventions claimed in the Asserted Patent.

72. Documents relating to the level of knowledge, schooling, experience, or expertise of a person having ordinary skill in the art (as this phrase is used in 35 U.S.C. § 103) to which any invention disclosed, described, or claimed in any of the Asserted Patent pertains.

73. Documents relating to the date on which any product incorporating, embodying, or practicing any claims of the Asserted Patent was first publicly or privately on sale in the United States, publicly or privately offered for sale in the United States, or used privately or publicly in the United States.

74. Documents constituting, relating to or reflecting any communication between You or Your counsel and any inventor of any of the Asserted Patent who was not a current employee of Yours at the time of the communication, relating to this action or any other actual or potential legal action relating to the Asserted Patent or TVision.

75. Documents constituting, reflecting, or relating to any of Your policies or procedures related to pursuing patents, including policies or procedures related to when to pursue patents, invention disclosures, patent prosecution, and the citation of prior art.

76. Documents reflecting or relating to Your first knowledge or awareness that TVision was researching or developing products that You contends incorporate, embody, or practice any claims of the Asserted Patent.

77. Documents, including without limitation all technical documents, relating to or reflecting the conception, design, development, or testing of each feature or component of each of the Practicing Products that incorporates, embodies or practices any claim of the Asserted Patent.

78. Documents sufficient to show Your revenues, expenses, or profits from the sale, lease, or licensing of any products or services that are based upon, include, or utilize any alleged invention of the Asserted Patent, or which embody or practice any claims of the Asserted Patent, including documents presented to management, directors, and actual or potential investors.

79. Documents sufficient to show Your revenues, expenses, or profits from the sale, lease, or licensing of any products or services that compete with products that You contend practice the invention(s) claimed in any or all of the Asserted Patent.

80. Documents relating to any third-party product that You believe practices or embodies any of any claims of the Asserted Patent.

81. Documents related to the market(s) for any of the alleged invention(s) claimed in any or all of the Asserted Patent, including but not limited to evaluations of the size or potential size of the market, the participants or potential participants and their respective products or services, Your role or potential role in the market(s), TVision's role or potential role in the market(s), and the effect, if any, that any of the Asserted Patent may have on the market.

82. Documents relating to Your plans for any Practicing Products designed to incorporate, embody, or practice any claims of the Asserted Patent, including business plans,

marketing plans, strategic plans, and product roadmaps, including but not limited to plans directly or indirectly targeted to the United States.

83. Documents concerning or relating to any appraisal or valuation of any Asserted Patent, including appraisal or valuations performed for tax purposes.

84. Documents constituting or reflecting communications with any person, including any actual or potential customers of Yours, any governmental agency, any former agent or employee of Yours, any reporter or other representative of the new media, any actual or potential investor in You, or any actual or potential funder of this action, referencing or relating to this action or TVision.

85. Documents supporting, refuting, or otherwise relating to Your assertions that the Asserted Patent are valid and enforceable.

86. Documents reflecting or relating to the date each Practicing Product was first on sale in the United States or used publicly in the United States.

87. Documents referring or relating to any actual or potential competition between You and TVision or between any of Your products or services and any Accused Product.

88. Documents relating to any technical or competitive analysis of any Accused Product.

89. Documents constituting, reflecting, or relating to Your patent licensing policies or practices.

90. Documents constituting or relating to any licenses to any rights under the Asserted Patent, and any related patents or related applications.

91. All contracts, including without limitation license agreements, settlement agreements, or release agreements, relating to the Asserted Technology, any Practicing Product, or content recognition generally.

92. Documents relating to or reflecting any efforts, whether or not successful, to license any rights under any of the Asserted Patent, any related patent or related application, the subject matter described or claimed in the Asserted Patent, or any intellectual property portfolio including the Asserted Patent, including all documents related to any licensing proposals, offers, negotiations, notice letters, claim charts, claim construction, infringement, draft and final license agreements, exhibits, demand letters, and cease and desist letters.

93. Documents that directly or indirectly ascribe a value to the Asserted Patent, including offers to purchase or sell the Asserted Patent, analyses or reports regarding the Asserted Patent and tax returns, SEC filings, or other financial statements regarding the Asserted Patent or any related patent.

94. Documents that directly or indirectly ascribe a value to any alleged invention claimed by the Asserted Patent any related patent or related application, including offers to purchase or sell the alleged invention, analyses or reports regarding the alleged invention and tax returns, SEC filings, or other financial statements regarding the Asserted Patent.

95. Documents relating to any valuation of any technology covered by the Asserted Patent, and any related patent or patent application.

96. Documents relating to any of Your press releases relating in any way to the development of any Practicing Product.

97. Documents relating to or reflecting any steps that You have taken to enforce the Asserted Patent and any related patents.

98. Documents and communications concerning royalties or any other form of compensation or consideration that You have received and/or are scheduled to receive from any third parties in relation to any of the Asserted Patent any related patents, including without limitation license agreements, settlement agreements, or release agreements.

99. All patent, technology, or intellectual property license agreements that You contend are reasonably comparable (in technological subject matter, license terms, or otherwise) to a license that would have resulted from a hypothetical negotiation between You and TVision related to the Asserted Patent as of the time of the first alleged infringement by You, and all documents reflecting or relating to such agreements.

100. Documents constituting or relating to any revenue-generating contracts entered into between You and any customer of Yours concerning, including, or utilizing Practicing Products.

101. Documents relating to the market(s) for Practicing Products that You contend incorporate, embody, or practice any claims of the Patents-in-Suit, including all documents concerning the advantages of such Practicing Products or related products, over other products, potential products, or alternative products or services developed or potentially in development by TVision or any other person, including comparisons of cost, coverage, quality, accuracy, acceptability, technical feasibility, or regulatory requirements.

102. Documents relating to Your sales or revenue forecasts or projections for any products or services based on, including, or utilizing Practicing Products or any other product or service that You contend incorporate, embody, or practice any claims of the Asserted Patent.

103. All Documents relating to the cost to research, design, develop, and manufacture any and all Practicing Products.

104. Documents or other evidence referenced in Your Complaint, and any subsequent amendments thereto, in support of Your claims against TVision for patent infringement or on which You relied in preparing those claims.

105. Documents concerning or relating to each of the legal and factual allegations and requests for relief in Your Complaint, as well as in any subsequently added or supplemental pleading in this action.

106. Documents supporting, refuting, or otherwise relating to Your request for injunctive relief in this action.

107. Documents supporting, refuting or otherwise relating to Your contention that "this case is exceptional" under 35 U.S.C. § 285.

108. Documents relating to or bearing upon the amount or form of a royalty, including a reasonable royalty, for the alleged infringement of the Asserted Patent by TVision.

109. Documents supporting, refuting, or otherwise relating to Your request for an award of costs and/or attorneys' fees in this litigation.

110. Documents supporting, contradicting, or otherwise relating to Your contention that You are entitled to recover any damages from TVision, including without limitation, damages claimed on the basis of lost profits, established royalties, reasonable royalties, price erosion, convoyed sales, or any other basis; and method(s) used by You to compute the amount of damages and the figures used in the computation.

111. All presentations relating to the Asserted Patent and their value, including in patent infringement litigation.

112. Documents relating to, identified in, and/or relevant to Your Federal Rule of Civil Procedure 26(a) Initial Disclosures, including any and all supplements and amendments thereto and any and all documents on which You relied in preparing those disclosures.

113. Documents, including without limitation all technical documents, reflecting or describing the hardware and software components of any Practicing Product.

114. Documents received by You from any third party that were requested from such third party as part of this action, that relate to this action, and/or that are responsive to any outstanding request for production served on You as part of this action, including, but not limited to, any documents received pursuant to a subpoena or Freedom of Information Act request.

115. All Documents furnished or shown to any third-party fact witness contacted, interviewed, or consulted by You or Your agents or attorneys in connection with the Asserted Patent or this action.

116. Documents that show the state of the art relative to the subject matter shown, described, and/or claimed in the Asserted Patent on or before the respective filing dates of the Asserted Patent.

117. Documents relating to the reasons for any sale of, or failure to consummate any sale of, any Practicing Products.

118. All Documents for which any Named Inventor of any of the Asserted Patent is listed as an author, co-author, inventor, co-inventor, editor, or contributor, and which relate in any way to the subject matter claimed in the Asserted Patent, including articles, patents, patent applications, abstracts, publications, books, manuscripts, papers, posters, speeches, technical disclosures, technical publications, and presentations.

119. Documents relating to the design, development, testing, function, and operation of any and all Practicing Products.

120. Documents relating to the pricing, promotion, and marketing of any product or service relating to or associated with the Asserted Patent or Asserted Technology.

121. Documents You intend to rely upon to support any claim construction positions related to the claims in the Asserted Patent You intend to take in this litigation.

122. Documents concerning the interpretation, scope, or construction of any term or phrase relating to the Asserted Patent.

123. Documents in Your possession, custody or control relating to, constituting communications about, or referring to TVision or any of the Accused Products.

124. All source code that You contend embodies any alleged invention in any of the Asserted Patent.

125. Documents disparaging, criticizing, or otherwise commenting negatively on any of Your products or services relating to or associated with the Asserted Technology.

126. Documents disparaging, criticizing, or otherwise commenting negatively on the Practicing Products.

127. Documents relating to Your business strategies relating to the management and assertion of Nielsen's patents pertaining to TV Audience Measurement Services, including but not limited to business strategies involving patent infringement litigation.

128. Documents submitted to, or received from, the USPTO concerning the prosecution, including any applications or reexamination proceedings associated therewith, of the Patents-in-Suit.

129. Documents reflecting information in Nielsen's possession prior to filing and that formed the basis of Nielsen's allegations that TVision infringed any Patents-in-Suit.

130. Documents concerning Nielsen's pre-filing investigations for each of the Nielsen-TVision Matters.

131. Documents concerning Nielsen's decisions to file, and if applicable, settle or dismiss each of the Nielsen-TVision Matters, including the timing of each lawsuit filed or considered.

132. Documents concerning Nielsen's decisions to file patent infringement suits against third parties, including but not limited to, HyphaMetrics, TVSquared, ACRCloud, and VideoAmp.

133. Documents reflecting the Person(s) who made the decision to file, and if applicable, settle or dismiss each of the Nielsen-TVision Matters.

134. Documents reflecting or relating to all prior art in Nielsen's possession relating in any manner to the claimed subject matter of the Patents-in-Suit.

135. Documents concerning Nielsen's knowledge or awareness that it failed to disclose relevant prior art related to the Patents-in-Suit to the USPTO.

136. Documents concerning Nielsen's knowledge or awareness that any of the claims of the Patents-in-Suit were invalid.

137. All Documents and Structured Data produced by Nielsen in the Nielsen-TVision Matters, including but not limited to, all transcripts and video recordings of any testimony under oath given by Nielsen's employees, Nielsen's former employees, and/or Nielsen's corporative representative(s), and all expert reports, with accompanying exhibits, produced or disclosed by Nielsen.

138. Documents sufficient to show all operative versions of Nielsen's policies concerning compliance with the antitrust laws in effect during the Relevant Time Period.

139. All Documents received from or provided to any government regulatory agency with responsibility for enforcing the antitrust laws, including but not limited to the Federal Trade Commission and U.S. Department of Justice, concerning TV Audience Measurement Services.

140. Documents sufficient to show all operative versions of Nielsen's document retention policies in effect during the Relevant Time Period.

141. All Documents that Nielsen intends to offer at trial or otherwise use to support any claim, defense, or affirmative defense that Nielsen asserts in this lawsuit.

142. All Documents referenced or relied upon by Nielsen in responding to any Interrogatory or Request for Admission served in this lawsuit.

143. All Documents that Nielsen receives from any non-party in this action.

144. All non-privileged Communications regarding the Nielsen-TVision Matters.

*<u>/s/ Andrew E. Russell</u>*
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant/Counterclaimant TVision Insights, Inc.*

OF COUNSEL:
Jason Xu
RIMÔN LAW P.C.
1990 K. Street, NW, Suite 420
Washington, DC 20006
(202) 470-2141

Eric C. Cohen
RIMÔN LAW P.C.
4030 Wake Forest Road, Suite 300
Raleigh, NC 27609
(984) 960-2860

Steig D. Olson
Sami H. Rashid
QUINN EMANUEL URQUHART
& SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART
& SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
(617) 712-7100

Adam B. Wolfson
QUINN EMANUEL URQUHART
& SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Benjamin D. Brown
Richard A. Koffman
Daniel McCuaig
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Ave NW, Suite 800
Washington, DC 20005
(202) 408-4600

Dated: December 4, 2025

**CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2025, this document was served on the persons listed below in the manner indicated:

**BY EMAIL:**

David E. Moore
Bindu A. Palapura
Andrew M. Moshos
Malisa C. Dang
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
(302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
amoshos@potteranderson.com
mdang@potteranderson.com

Steven Yovits
Jason P. Greenhut
Douglas Lewis
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
(312) 857-7070
syovits@kelleydrye.com
jgreenhut@kelleydrye.com
dlewis@kelleydrye.com

*/s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant/Counterclaimant TVision Insights, Inc.*