**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | C.A. No. 25-575-CJB |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY LETTER TO THE HONORABLE CHRISTOPHER J. BURKE FROM DAVID E. MOORE, ESQ. REGARDING NIELSEN'S MOTION TO STAY**

OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason Greenhut
Matthew Kennison
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Andrew M. Moshos (#6685)
Malisa C. Dang (#7187)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
amoshos@potteranderson.com
mdang@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: February 17, 2026
12719807 / 14944.00011

PUBLIC VERSION
Dated: February 24, 2026

Dear Judge Burke:

TVision's opposition should be rejected and its counterclaim should be stayed.

**A Stay Would Simplify the Issues For Trial**

TVision primarily argues its claims are broader than sham litigation and therefore a stay is not appropriate. (D.I. 57 at 2–3.) TVision is mistaken. The thrust of TVision's counterclaims is predominantly sham litigation. (*Compare* D.I. 30 ¶¶ 87–179 (***93*** sham paragraphs) *with* ¶¶ 50–86 (***37*** non-sham paragraphs).) Indeed, TVision's primary theory of antitrust injury is that it spent its resources defending against Nielsen's patent litigation.[1] (*Id.* ¶ 184.) There is also some overlap between the patent issues set to go to trial in C.A. No. 21-57 and the antitrust claims, including the nature of the competition between TVision and Nielsen. Permitting the patent cases to go first would therefore potentially "moot, narrow, or otherwise simplify the antitrust claims." *Apotex, Inc. v. Senju Pharm. Co., Ltd.*, 921 F. Supp. 2d 308, 314 (D. Del. 2013).

TVision attempts to downplay the fact that courts in this District exercise their discretion to stay antitrust cases *even if* the claims are not limited to sham litigation. (*See* D.I. 57 at 2–3.) Notably, TVision attempts to bury its discussion of *Apotex* in a footnote, but that case is in fact on all fours with this case. (*Id.* at 3 n.5.) The counterclaimant in *Apotex* brought claims of sham litigation (involving 3 patent lawsuits) and a separate theory related to alleged anticompetitive product-switching. 921 F. Supp. 2d at 313–15. The court stayed the *entire* antitrust case because, like here, a stay "could eliminate or narrow some of the antitrust claims." *Id.*; *see also Monsanto Co. v. Syngenta Seeds, Inc.*, C.A. No. 04-305-SLR, 2006 WL 7204491, at *1 (D. Del. Nov. 8, 2006) (staying all sham and non-sham antitrust claims).

TVision wrongly asserts that a stay would be inappropriate because it alleges that "Nielsen has filed a parade of patent actions against rival companies" and such allegations "do not turn on the outcome of any patent lawsuit." (*See* D.I. 57 at 3–4.) TVision cannot establish serial litigation using suits against non-parties. (*See* D.I. 50 at 21 (citing *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 157–58 (3d Cir. 2017) (serial litigation claims are limited to suits against the claimant); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 280 F. Supp. 3d 691, 712–13 (D. Md. 2017) (lawsuits against other parties do not establish serial litigation); *aff'd*, 937 F.3d 1359 (Fed. Cir. 2019)).) TVision only points to a basis for dismissal, not to reject a stay motion. Even if the Third Circuit's more permissive standard applied (and it does not, s*ee* D.I. 50 at 20–21), the results of Nielsen's underlying patent litigations matter, *see Wellbutrin*, 868 F.3d at 157 (number of wins is relevant).

TVision also argues that most of the patent cases will be resolved before the antitrust trial, which cuts against a stay. (*See* D.I. 57 at 4.) TVision has it backwards. Even if TVision is correct, then the requested stay will be relatively modest in length and, as Nielsen has stated, will benefit the parties and the Court by resolving or clarifying antitrust issues, likely obviating the need for much of the broad and burdensome antitrust discovery TVision now seeks.

---

[1] A party's mere expenditure of attorneys' fees is not sufficient to confer antitrust standing. (D.I. 50 at 18 n.14.)

**The Status of the Litigation Favors a Stay**

TVision attempts to blur discovery on the patent claims with discovery on the antitrust counterclaims, asserting that "the broader dispute" dates back to 2021 in support of its claim that "substantial resources" have already been devoted to the case. (*Id.*) But this ignores that the prior discovery TVision references was produced in Nielsen's *patent* litigation in C.A. No. 21-57, not in furtherance of its antitrust theories. The referenced "substantial resources" were therefore not made in furtherance of the antitrust case. That the parties may realize some efficiencies from prior patent-related discovery does not change the fundamental reality that the bulk of the antitrust case remains ahead.

TVision also asserts that "the parties' disputes date back over four years and should be resolved efficiently, not delayed. That is why TVision dismissed its prior antitrust counterclaims, which did not cover the full scope of Nielsen's misconduct because Nielsen continued to expand its scheme." (*Id.*) TVision's sudden professed concern for "efficiency" is difficult to reconcile with its own conduct. TVision filed its antitrust counterclaim in C.A. No. 22-1345 in October 2023. (C.A. No. 22-1345, D.I. 68.) TVision then did nothing on its antitrust case for five months, and on March 28, 2024, after being given the choice by the Court, *voluntarily stayed* its antitrust claims. (*Id.*, D.I. 105.) After the stay, TVision then served its first antitrust discovery requests in February 2025 (*id.*, D.I. 125), which Nielsen answered on March 17, 2025. (*Id.*, D.I. 128.) And for the next nine months, TVision did nothing to push its antitrust claims forward: it conducted no follow-on discovery, issued no subpoenas, produced no documents, and took no depositions. TVision cannot now say with a straight face that its opposition to Nielsen's request to stay is motivated by "efficiency." Just as inconsistent is TVision's suggestion that efficiency motivated its dismissal of its first antitrust counterclaim. The reality is that TVision abruptly dismissed that claim the day after Nielsen told TVision it was engaging in improper claim-splitting—an issue that had nothing to do with efficiency and everything to do with TVision's effort to sidestep the Court's schedule and Rule 16, as Nielsen has explained in its motion to dismiss. (D.I. 50 at 4–8; *see also* **Ex. A**.)

**The Record Does Not Support TVision's Claimed Prejudice**

TVision agrees that it does not directly compete with Nielsen, but argues instead "the only reason why TVision has not been able to directly compete head-to-head with Nielsen, despite offering a superior substitute product, is because Nielsen has unlawfully blocked competition through the anticompetitive conduct challenged in the counterclaims." (D.I. 57 at 4–5.) [redacted] TVision's current CEO and Co-founder testified that TVision [redacted] (**Ex. B**, at 87:2-3, 87:17-19, 110:18-111:4.) Likewise, Nielsen's former Chief Revenue Officer and Co-Founder testified TVision was [redacted] (**Ex. C**, at 33:13–18); and TVision's former Chief Strategy Officer testified that [redacted] (**Ex. D**, at 78:3–7.) TVision's sudden about-face on competition with Nielsen is contradicted by its own sworn testimony and should be given no weight.

Nielsen respectfully requests that the Court grant its motion.

Respectfully,

*/s/ David E. Moore*

David E. Moore

DEM:rms/12719807/14944.00011

cc: Clerk of the Court (via hand delivery)
Counsel of Record (via electronic mail)