**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 25-575-CJB |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY LETTER TO THE HONORABLE CHRISTOPHER J. BURKE**
**IN FURTHER SUPPORT OF NIELSEN'S**
**MOTION FOR LEAVE TO AMEND THE SCHEDULING ORDER**


OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason Greenhut
Matthew Kennison
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Eric J. Stock
Jefferson E. Bell
Kate Swisher
Katie Zavadski
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

Joshua Lipton
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Tel: (202) 955-8500

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*


Dated: August 3, 2026
6002655663 / 14944.00011

Dear Judge Burke:

**I. TVision Created the Schedule Mismatch—and Now Seeks to Exploit It.**

TVision's opposition makes clear its strategy to prevent Nielsen from taking the full and fair discovery required to defend against TVision's antitrust claims. TVision tells a story of economic hardship to the Court and (it hopes) a jury, claiming it "has struggled to stay afloat" because it had to defend patent lawsuits that supposedly "impede[d] TVision's position in the marketplace and cause[d] competitive harm." D.I. 127 at 4. That is incorrect. And TVision's claimed "struggle to stay afloat" due to litigation is difficult to reconcile with its acquisition by Viant, a public company with a market cap of over $770 million. But testing these claims requires discovery of TVision's internal business documents and of the third parties implicated by its allegations of foreclosure. Through scheduling gamesmanship, TVision now seeks to foreclose that essential discovery.

As the Court will recall, TVision negotiated the schedule in this case when it involved a single patent claim. The schedule suited that case. But only 13 days after securing that patent-appropriate schedule, TVision filed three antitrust counterclaims resting in substantial part on allegations about its internal business workings and supposed inability to compete. TVision thus negotiated a schedule for a case it knew it was about to transform—and the dimensions of the resulting mismatch have emerged only in stages. The scope of antitrust discovery *from Nielsen* was disputed until this Court's May 5 Order and not fixed until the parties' June 1 search-term agreement, while the scope of *TVision's* production remains unknown even today. TVision has produced a grand total of *54 documents*, and provided its proposed search terms (which still must be negotiated) only on July 31. In addition, TVision concedes it is likely to produce the substantial majority, if not virtually all, of its documents at or just before the September 18 substantial completion deadline. D.I. 127 at 3. TVision's proposal—that Nielsen review tens of thousands of documents, effect necessary third-party discovery in response, and conduct all depositions "in parallel," within a nine-week period, *id.*—is unrealistic, particularly given the need to review the documents prior to proceeding with other steps.[1] Having created the mismatch and withheld the documents needed to navigate it, TVision now asks the Court to allow it to run out the clock.

The extension set out in Exhibit 1 is reasonable. Courts in this District routinely adjust schedules when new claims expand a case.[2] *See, e.g.*, *Westinghouse Air Brake Techs. Corp. v. Siemens Mobility, Inc.*, 330 F.R.D. 143, 149-50 (D. Del. 2019) (antitrust counterclaims "would almost certainly … displace[]" patent schedule); *Micron Tech., Inc. v. Rambus Inc.*, 409 F. Supp. 2d 552, 558-59 (D. Del. 2006) (schedule can be adjusted for discovery based on new claims).[3]

TVision identifies no cognizable prejudice. If TVision truly believed it would be harmed by a modest extension, it would have produced more than 54 documents by this stage of the case. Some delay and discovery expense do not defeat good cause where the movant was diligent and

---

[1] TVision's suggestion (D.I. 127 at 3) that the parties simply review productions from prior cases ignores that the antitrust counterclaims have put new, never-produced material at issue.

[2] TVision's claim (D.I. 127 at 4) that it "previously alerted Nielsen" to its intent to file counterclaims is wrong. The document it cites predates this case by over a year and concerned a different action. It is not notice. Nor could Nielsen have anticipated TVision's claim-splitting maneuver. *See* C.A. No. 22-1345-CJB, D.I. 144.

[3] The patent dates in Ex. 1 are conforming adjustments following the extended discovery periods, not independent relief; no argument was "reserved" for reply. D.I. 127 at 3-4 n.2.

the requested relief is important. *Nielsen Co. v. TVision Insights, Inc.*, 2025 WL 5081334, at *2 (D. Del. Apr. 10, 2025). TVision's "competitive harm" rhetoric, D.I. 127 at 4, rings hollow from a party that first pleaded similar claims 33 months ago but never sought preliminary relief. And TVision's own conduct in C.A. No. 22-1345-CJB answers its objection: there, it agreed to a 23-week interval between substantial completion and the close of fact discovery, and its explanation for doing so—that the schedule accommodated case-specific circumstances—concedes that schedules must flex to fit the case. *See* C.A. No. 22-1345-CJB, D.I. 135.

**II. Nielsen Was Diligent Measured from the Relevant Trigger.**

TVision's claim that Nielsen should have moved when the counterclaims were filed, D.I. 127 at 1-2, measures from the wrong date: that TVision laid the framework for its scheduling gamesmanship in November does not mean Nielsen could then measure the mismatch that would emerge over the following months. Diligence requires promptness "both in discovering that an amendment was necessary and in moving to amend after that discovery," *Brit. Telecomms. PLC v. IAC/InterActiveCorp*, 2020 WL 3047989, at *2 (D. Del. June 8, 2020), and runs from when the specific need for relief crystallizes. *S. Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp. 2d 509, 521-22 (D. Del. 2010) (movant "acted relatively quickly" once "specific nature" of issue became "apparent"); *Cordance Corp. v. Amazon.com, Inc.*, 255 F.R.D. 366, 371-74 (D. Del. 2009) ("appropriate" to confirm facts before moving).

TVision's authorities, D.I. 127 at 1-2, condemn conduct opposite to Nielsen's: *MacQueen* denied a motion filed on the case-dispositive deadline after eleven months without discovery; *Glaxosmithkline*, a pleading amendment filed eight months after the deadline based on already-known facts; *Cumis*, a motion whose brief never addressed diligence. 2015 WL 167674, at *4-9; 2016 WL 7319670, at *2-3; 2025 WL 1424871, at *2. None of TVision's cited cases involved a party that, like Nielsen, moved before any deadline expired, after producing ~50,000 documents.[4] *airSlate* is likewise misplaced. Nielsen never suggested it could "sit on its hands" pending its motions, D.I. 127 at 2; it pressed forward with discovery throughout, producing over 375,000 pages to date, and sought relief when the facts became known.

The scope of Nielsen's antitrust discovery was not fixed until June.[5] And the extent of TVision's foot-dragging has only recently unfolded. A November motion to rebuild the schedule around then-unknown discovery dimensions would have been premature. Once the facts crystallized, Nielsen acted diligently at every step: it added 17 reviewers on June 12, raised the schedule on June 23, proposed dates on July 8 and 15, and moved on July 22—before any affected deadline expired.[6] Nielsen respectfully requests entry of the schedule at Exhibit 1.

---

[4] *See Frederick v. Avantix Lab'ys, Inc.*, 773 F. Supp. 2d 446, 451-52 (D. Del. 2011) (sustained pursuit of discovery demonstrates diligence).

[5] The expanded custodian set resulted in a search universe of ~256,000 documents, a 28% increase over the pre-May 5 review population. The May 5 Order also swept in litigation-decision files—and privilege review—spanning nine suits against five separate litigation opponents (RFP 132), each with its own witnesses and third-party discovery. Nielsen is complying, but it takes time.

[6] TVision's suggestion that this motion was "precipitated by . . . new counsel," D.I. 127 at 4, fails on its own timeline: Nielsen raised the schedule *before* new counsel appeared. *Id.* at 1.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason Greenhut
Matthew Kennison
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Eric J. Stock
Jefferson E. Bell
Kate Swisher
Katie Zavadski
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

Joshua Lipton
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Tel: (202) 955-8500

Dated: August 3, 2026

6002655663 / 14944.00011