**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | C.A. No. 25-575-CJB |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| | ) | |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

# JOINT CLAIM CONSTRUCTION BRIEF

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com
arussell@shawkeller.com

*Attorneys for Defendant TVision Insights, Inc.*

Dated: August 20, 2026
13107568 / 14944-00011

## TABLE OF CONTENTS


I. PRELIMINARY STATEMENTS ..... 1

A. Nielsen’s Opening Statement ..... 1

B. TVision’s Answering Statement ..... 1

C. Nielsen’s Reply Statement ..... 2

D. TVision’s Surreply Statement ..... 3

II. AGREED-UPON CONSTRUCTIONS ..... 4

III. DISPUTED CONSTRUCTIONS ..... 4

A. Term 1: “monitoring the local area network to identify the [streaming device/television]” (’642 Patent, Claims 1, 12, 17, 21) ..... 4

1. Nielsen’s Opening Position ..... 4

2. TVision’s Answering Position ..... 11

3. Nielsen’s Reply Position ..... 15

4. TVision’s Surreply Position ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
350 F.3d 1365 (Fed. Cir. 2004)....................9

*Alnylam Pharms., Inc. v. Moderna, Inc.*,
138 F.4th 1326 (Fed. Cir. 2025) ....................9

*Astrazeneca AB v. Mutual Pharm. Co.*,
384 F.3d 1333 (Fed. Cir. 2004)....................9

*Edwards Lifesciences Corp. v. Cardiovalve Ltd.*,
2025 WL 1618096 (Fed. Cir. 2025)....................20

*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014)....................8

*K-2 Corp. v. Salomon S.A.*,
191 F.3d 1356 (Fed. Cir. 1999)....................25

*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*,
177 F.3d 968 (Fed.Cir.1999).................... 24-25

*Liebel-Flarsheim v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)....................8, 11

*Markman v. Westview Instr., Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc)....................28

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)....................28

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005).................... passim

*Renishaw PLC v. Marposs Societa' per Azioni*,
158 F.3d 1243, 1250 (Fed. Cir. 1998) ....................26

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001)....................10

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002).................... 10-11

*Thorner v. Sony Comput. Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................5, 8, 10, 17

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)....................7, 16

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)....................24

**STATUTES**

Federal Rule of Civil Procedure 16(b)(4)....................16

## TABLE OF EXHIBITS

| Ex. No. | Description |
|---|---|
| 1 | U.S. Patent No. 12,047,642 |
| 2 | MERRIAM-WEBSTER DICTIONARY, "monitoring," *available at* https://www.merriam-webster.com/dictionary/monitoring |
| 3 | DICTIONARY.COM, "monitor," *available at* https://www.dictionary.com/browse/monitor |
| 4 | MERRIAM-WEBSTER DICTIONARY, "identify," *available at* https://www.merriam-webster.com/dictionary/identify |
| 5 | February 1, 2024 Office Action |
| 6 | May 15, 2024 Response to Office Action |

# I. PRELIMINARY STATEMENTS

## A. Nielsen's Opening Statement

The parties have identified two similar terms from U.S. Patent No. 12,047,642 (the '642 patent) for construction: "monitoring the local area network to identify the streaming device" (claims 1, 12, and 17) and "monitoring the local area network to identify the television" (claim 21). TVision's proposed construction, "[o]bserving the local area network waiting for a notification of an identity of the [streaming device/television]," improperly reads in a limitation from the specification. (D.I. 97 at 4.) The correct construction, in contrast, is the plain and ordinary meaning because the claim language is clear with no need to add a limitation requiring "waiting for a notification of an identity of the streaming device."

The Court should adopt Nielsen's proposal. The plain and ordinary meaning of the terms does not require "waiting" for any "notification" by "observing" anything, contrary to TVision's proposed construction. And claim terms should be given their plain and ordinary meaning unless the patentee acted as a lexicographer or disavowed claim scope—neither of which occurred here. Accordingly, the Court should reject TVision's improper attempt to narrow the claims and adopt the plain and ordinary meaning with the clarification that TVision's proposed limitation should not be added to this claim language.

## B. TVision's Answering Statement

The parties agree the two "monitoring . . ." terms should be given their plain and ordinary meaning.[1] The remaining dispute concerns the bounds of that plain and ordinary meaning. The plain language of both terms requires monitoring "the local area network." Although the parties

---

[1] TVision has changed its construction to the plain and ordinary meaning, as the prior disagreement between the parties did not address the real dispute, *i.e.,* what is being monitored.

agree on the meaning of “monitoring,” they disagree about how that concept applies when the object being monitored is “the local area network.” In other words, the dispute is not what it means to monitor something, but what it means to monitor the local area network itself.

TVision’s position is that the plain and ordinary meaning applies to the entire phrase, “monitoring the local area network.” To satisfy the plain language of the claim under the plain and ordinary meaning, the system must monitor some aspect of the local area network to identify the streaming device. A system does not satisfy this limitation simply because it exchanges information with a streaming device over a local area network.

TVision’s interpretation gives effect to the actual claim language. It is also consistent with the supposed inventive contribution of the patent. TVision’s interpretation should therefore be adopted.

**C. Nielsen’s Reply Statement**

TVision’s Answering Brief confirms there is no genuine claim construction dispute for the Court to resolve, and the Court should decline to construe the terms. Both parties now agree that the “monitoring” terms should be given their plain and ordinary meaning. Having abandoned the construction it disclosed in the Joint Claim Construction Chart, TVision now proposes “plain and ordinary meaning.” TVision tacks on a statement of what the plain and ordinary meaning purportedly “requires,” but that statement simply repeats the words of the term in reverse order (changing “monitoring the local area network” to “the local area network must be monitored”). That is no construction at all: it adds nothing over the words of the claim and would not assist (and more likely would confuse) the jury. Thus, there is no reason for the Court to construe the terms.

Separately, in the argument of its brief—but nowhere in its proposed construction—TVision contends that the plain and ordinary meaning of these terms is more limited and that

"monitoring the local area network" cannot involve communicating with a device (*i.e.*, it excludes the communications transmitted over the local area network). The Court should reject these arguments in the first instance because the limitations TVision advocates appear nowhere in the construction it asks the Court to adopt. In addition, however, those limitations fail on the merits: the specification affirmatively refutes TVision's position, as it describes a network meter that monitors "network traffic data" including communications between devices, and TVision identifies nothing in the intrinsic record that disavows this scope.

Accordingly, Nielsen respectfully submits that no construction is necessary.

**D. TVision's Surreply Statement**

TVision's construction is simply the plain meaning, which is that "monitoring the local area network" requires that the local area network must be monitored. Nielsen's entire argument rests on a miscasting of TVision's position. TVision has never argued that "monitoring the local area network" *excludes* monitoring communications on the network. Rather, TVision's position is the two are not equivalent: monitoring a network is not the same as monitoring communications. Receiving and/or monitoring a communication is not by itself sufficient to satisfy the claim—even if the communication was sent over the network—if the monitoring of that communication was not a result of "monitoring the local area network." The distinction is meaningful and the core dispute between the parties.

TVision's construction is the one most consistent with the plain language and the intrinsic record, which make clear that monitoring a network is not the same thing as monitoring communications. Nielsen's criticism are all based on the incorrect premise that TVision's construction excludes monitoring communications on the network, and thus are irrelevant.

Nielsen's construction requires reinterpreting the claim and contradicts the intrinsic evidence and the file history and therefore cannot be correct.[2]

## II. AGREED-UPON CONSTRUCTIONS

The parties submit that there are no agreed-upon constructions.

## III. DISPUTED CONSTRUCTIONS

### A. Term 1: "monitoring the local area network to identify the [streaming device/television]" ('642 Patent, Claims 1, 12, 17, 21)

| Term | Nielsen's Proposal[3] | TVision's Proposal |
|---|---|---|
| "monitoring the local area network to identify the streaming device"<br><br>(Claims 1, 12, 17) | Plain and ordinary meaning, no construction necessary | Plain and ordinary meaning, which requires that the local area network must be monitored |
| "monitoring the local area network to identify the television"<br><br>(Claim 21) | | |

#### 1. Nielsen's Opening Position

##### a. The Plain and Ordinary Meaning of the Claim Terms Does Not Include "waiting for a notification of an identity"

###### i. The Plain Meaning of the Claim Language Is Readily Apparent, and the Common Understanding of the Words Used Does Not Include "waiting for a notification of an identity"

"The words of a claim are generally given their ordinary and customary meaning as

[2] Nielsen argues in a footnote that TVision waived its argument. Not so. Nielsen attempted to hide its interpretation behind "plain and ordinary meaning" even as its offered construction is not the literal meaning of the words in the claim—and not even the interpretation Nielsen argued in its opposition to TVision's Motion to Dismiss. After receiving Nielsen's opening brief, it became apparent the focus of the dispute had shifted from what "monitoring" is to what is being monitored. TVision's attempt to narrow and focus the dispute is not waiver.

[3] Because TVision has amended its previous construction of the terms it proposed in the Joint Claim Construction Chart where it was reading a limitation into the claim ("observing the local area network waiting for a notification of an identity of the streaming device"), Nielsen's construction no longer requires the qualifier that the term "does not require waiting for a notification of an identity of the streaming device."

understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances, general purpose dictionaries may be helpful." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal citations omitted).

The meaning of the language used in these claim terms is readily apparent, and the commonly accepted meaning of their words should apply. Independent claims 1, 12, and 17 are directed to a "network meter for monitoring network traffic" that executes the following operations (with emphasis added to highlight the term proposed for construction):

- "***monitoring the local area network to identify the streaming device on the local area network***, wherein the streaming device is accessing media from the Internet and providing the media to a television for presentation";
- based on identifying the streaming device, querying the streaming device to determine an active streaming application that is associated with a streaming service and running on the streaming device; and
- storing an identifier of the active streaming application.[4]

The words in the disputed claim term are common English words that a person of ordinary skill in the art ("POSITA") would readily understand. For example, the word "monitoring" is a well-known term that means to watch or keep track of something. *See* Ex. 2, MERRIAM-WEBSTER DICTIONARY, "monitoring," *available at* https://www.merriam-webster.com/dictionary/monitoring

[4] Independent claim 21 recites an analogous limitation that replaces "the streaming device" with "the television": "monitoring the local area network to identify ***the television*** on the local area network, wherein the television is accessing media from the Internet and presenting the media." That difference is immaterial to the present claim construction dispute.

("to watch, keep track of, or check usually for a special purpose."); *see also* Ex. 3, DICTIONARY.COM, "monitor," *available at* https://www.dictionary.com/browse/monitor ("to watch closely for purposes of control, surveillance, etc.; keep track of; check continually"). Similarly, "to identify" is another well-known phrase that means determine an identity. *See* Ex. 4, MERRIAM-WEBSTER DICTIONARY, "identify," *available at* https://www.merriam-webster.com/dictionary/identify ("b(1) to ascertain the identity of").

TVision's proposal to construe "monitoring" as "***observing*** the local area network ***waiting for a notification of an identity*** of the streaming device" departs from the commonly understood meaning of the words used in the claim. Nothing in the common understanding of the words "monitoring" and "to identify" suggests that the claim requires the network meter to observe any "waiting" period to identify a streaming device. Similarly, the claims' words say nothing about limiting *how* the identification process should be accomplished. TVision's proposal to restrict the network meter to identifying the streaming device by "waiting for a notification of an identity" through "observing" the local area network is far outside the scope of the commonly understood meaning of the claim language.

In fact, TVision's proposal makes *less clear* than the plain language of the claim precisely what actions fall within the scope of the claim. Specifically, in TVision's proposal, it is unclear if this limitation precludes the network meter from *requesting* the identity of the streaming device[5] before obtaining a notification from that streaming device that includes its identity. The combination of the passive words "observing" and "waiting" suggests that TVision may intend the language to mean that such actions are prohibited, but the plain claim language contains no

[5] Although Claim 21 recites a "television" instead of a "streaming device," the same arguments apply with respect to that term.

limitation that would suggest the "network meter" cannot request the identity from the streaming device before monitoring the network. TVision's proposed construction therefore introduces unnecessary confusion. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use [by the jury] in the determination of infringement").

**ii. Nothing in the Specification or Prosecution History Supports Departing from the Readily Apparent Meaning**

Even if meaning of the words in the claim were not readily apparent (which they are), TVision's proposal should be rejected. When the meaning of a claim term is not readily apparent, "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (internal quotations omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence." *Id*. As explained above, nothing in the language of the claims themselves supports TVision's proposal.

In addition, neither the specification nor the prosecution history contains anything to support TVision's proposals. ***First***, the words "wait" or "waiting" from TVision's proposal do not appear in the specification or prosecution history at all. Nor do the specification or prosecution history describe any similar concept.

***Second***, as explained below in Section II.A.2.B, while the specification may describe examples that identify a streaming device by receiving a notification (*see* Ex. 1, '642 patent, 8:12-27, 18:7-11, 18:63-65), those descriptions are expressly stated to be examples of ways in which the network meter may operate. As the Federal Circuit has long held, claims should not be limited to embodiments in the specification. *See Phillips*, 415 F.3d at 1323 ("[A]lthough the specification

often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.”). This is true even if the specification describes only one embodiment. *See Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (collecting cases: “this court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.”).

***Third***, TVision also seeks change the claim term “monitoring” to “observing.” Setting aside the fact that “observing” does not appear in the specification, it is unclear if TVision intends there to be a difference between these words, which would render the proposed language unnecessary. Regardless, Nielsen believes that use of this word should be rejected because it adds additional ambiguity to the claim.

TVision’s proposal departs from the plain and ordinary meaning of the disputed claim terms by rewriting the claim language to include additional limitations. TVision’s unsupported additions should therefore be rejected.

#### b. The Plain and Ordinary Meaning of the Claim Terms Should Apply

Departure from the plain and ordinary meaning of a claim term is appropriate in only two cases: (1) when a patentee sets out a definition in the specification and thus acts as their own lexicographer; and (2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution. *See Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014). Because lexicography and disavowal depart from the ordinary meaning of claim terms, the standard for finding each is “exacting.” *Thorner*, 669 F.3d at 1365-66. Since neither exception applies here, the plain and ordinary meaning of these terms should be adopted.

#### i. The Patentee Did Not Act as a Lexicographer

To support a finding that the patentee acted as a lexicographer, "the intrinsic evidence must 'clearly set forth' or 'clearly redefine' a claim term so as to put one reasonably skilled in the art on notice that the patentee intended to so redefine the claim term." *Alnylam Pharms., Inc. v. Moderna, Inc.*, 138 F.4th 1326, 1333 (Fed. Cir. 2025) (internal quotes and citations omitted). While there is no bright-line rule setting forth the language that meets this exacting standard, examples of such language include that a term is "defined" in a particular way, or that the term at issue "means" something specific in the context of the patent. *See, e.g.*, *Astrazeneca AB v. Mutual Pharm. Co.*, 384 F.3d 1333, 1339 (Fed. Cir. 2004) ("[t]he solubilizers suitable according to the invention ***are defined below***"); *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1369, 1371 (Fed. Cir. 2004) ("'Multiple embossed' ***means*** two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing") (all emphases added).

Nothing in the specification or prosecution history of the '642 patent evidences a clear definition of the words of the claim that departs from their plain and ordinary meaning. For example, the specification only uses the word "define" to provide specific definitions for certain terms, none of which appear in the disputed limitations of claims 1, 12, 17, or 21: "code" and "watermark" (Ex. 1, '642 patent, 2:48-50); "fingerprint" and "signature" (*Id.*, 3:8-10); and "non-transitory computer readable medium" (*Id.*, 22:25-27). But neither the specification nor the prosecution history uses the word "define" in reference to the phrases "monitoring" or "to identify" as used in claims 1, 12, 17, or 21. Nor do the specification or prosecution history explain that any words, let alone the words from the disputed claim terms, "means" anything specific. Instead, the specification describes the "network meter 106" in the "example of FIG. 1 is a device that monitors the network traffic data flowing through the network device 104." *Id.*, 7:10-12. Far from evidencing an intent to redefine the words of that claim, that usage is consistent with the ordinary

meaning of "monitoring" which is to watch or keep track of something. *See* Ex. 2, MERRIAM-WEBSTER DICTIONARY, "monitoring," *available at* https://www.merriam-webster.com/dictionary/monitoring.

In the absence of clear intent to redefine the words used in the claims, lexicography does not support departing from their plain and ordinary meaning.

**ii. The Patentee Did Not Disavow Claim Scope**

"The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). "The standard for disavowal of claim scope is similarly exacting." *Thorner*, 669 F.3d 1362, 1366 (Fed. Cir. 2012); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). Neither the specification nor the prosecution history contains any expression of manifest exclusion or restriction here.

To the extent TVision may argue that certain embodiments disclosed in the specification describe receiving a "notification" in the process of "monitoring… to identify a streaming device," these embodiments are non-limiting examples of how that process may be performed. *See, e.g.*, Ex. 1, '642 patent, 8:12-27 ("***In some examples***… [t]he media presentation device meter 110 ***may*** further be configured to communicate with the network meter 106 to transmit a notification from the media presentation device meter 110 to the network meter 106 that may indicate the identity of the streaming device 112"); *id.*, 18:7-11 ("***In the illustrated example*** of FIG. 5, the program 500 continues at block 506 where the media presentation device meter 110 notifies the network meter 106 of an identity of a streaming device"); *id.*, 18:63-65 ("FIG. 6 is a flowchart representative of ***example*** machine readable instructions which ***may*** be executed to implement the network meter of FIGS. 1 and 2") (all emphases added).

Nowhere in these examples, nor anywhere else in the specification, is there a manifest

expression of exclusion that would support a finding of disavowal of claim scope. *Teleflex*, 299 F.3d at 1325. Courts have consistently held that in the absence of such manifest expressions of exclusion, the specification should not be held to disavow claim scope and limit the claims to embodiments in the specification. *Phillips*, 415 F.3d at 1323 ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Liebel-Flarsheim*, 358 F.3d at 906.

Because neither the specification nor the prosecution history supports a finding that the patentee acted as his own lexicographer or disavowed any claim scope, the plain and ordinary meaning of the claims should be adopted.

**c. Nielsen's Conclusion**

For the foregoing reasons, Nielsen respectfully requests that the Court adopt Nielsen's proposed construction of the disputed terms.

**2. TVision's Answering Position**

**a. The Claims Require Monitoring of the Local Area Network Itself, Not Merely Communications or Notifications Sent Over a Network**

The claim language is straightforward: the network meter is required to monitor "the local area network":

- "monitoring the local area network to identify the streaming device on the local area network" (claims 1, 12, 17)
- "monitoring the local area network to identify the television on the local area network" (claim 21)

(Ex. 1, '642 Pat. at cl. 1, 12, 17, 21.)

Consistent with that requirement, a local area network has characteristics and activity that can be observed, such as traffic patterns, packet flows, bandwidth usage, device connections, latency, routing activity, or other network-wide conditions. It is network conditions like these that

the claim recites as being monitored. Communicating with a device is different than monitoring a network, even if that communication occurs over the network, and a system does not monitor a network simply because it sends messages to, receives messages from, or otherwise communicates with devices that happen to be connected to that network.

The claim language itself confirms this distinction. Where the claims are directed to communications with a device, they say so expressly, reciting actions such as "querying the streaming device" (claim 1), "transmitting the identifier . . . to a server" (claim 2), and "receiv[ing] media from the router" (claim 5). The disputed limitations use different language: they require "monitoring the local area network." They do not require monitoring a device, querying a device, or communicating over a network.

The prosecution history similarly supports this interpretation. The original claim required monitoring the network to perform device discovery. *See* Ex. 5, Feb. 1, 2024 Office Action at 3 (claim 1 reciting "monitoring a network to discover, on the network, . . . "). The examiner rejected the original claim language as lacking written description support. *Id.* The examiner stated that the disclosures in the patent concerning device discovery were limited to active communications with devices—which was not monitoring the network:

> The Specification, as originally filed on 12/4/2018, in the chain of continuity, fails to disclose any such discovery. Though ¶¶ [68] and [78] of the Specification, as published in USPGPUB 2020/0177966, mention discovering, such discoveries are limited to querying of the devices.

*Id.* The applicant did not dispute this finding by the examiner, opting instead to amend the claim away from monitoring the network to perform device discovery.

TVision's interpretation is also consistent with Nielsen's own earlier interpretation of the claims. When opposing TVision's Motion to Dismiss, Nielsen argued that the limitation was not broad enough to encompass merely monitoring data communicated over a network. Instead,

Nielsen represented that the claims require "[m]onitoring network conditions and basing identification of a streaming device on network conditions created when a streaming device is accessing media from the Internet and providing that media to a television for presentation." D.I. 13 at 16 (emphasis added).

Thus, giving proper effect to the claim language requires monitoring the network itself, not merely monitoring communications with devices using the network.

**b. TVision's Interpretation Is Consistent With the Goal of the Patent**

TVision's interpretation is also consistent with the supposed invention of the '642 patent—a multistep technique that works when the network meter is ***unable*** to access (and thus, interpret) network traffic. According to the '642 patent, in order to monitor media streaming services, prior art network meters would simply read data packets communicated over a network:

> Typically, media monitoring services would monitor the media streamed to desktop and laptop computers by monitoring the media presentation devices to which the media was being sent. This was fairly simple because there existed direct connectivity between the monitoring device and the media presentation devices. For example, a network meter monitored a router in a household and the media streaming through the router. This allowed for a relatively simple method of monitoring the media streaming to the laptop or desktop computer because the media monitoring service needed only monitor the network traffic data, such as the uniform resource locator (URL) for the media being presented or the Internet Protocol (IP) address for the media presentation device to which the media was sent. Furthermore, the network traffic data included data packets which were not encrypted and could be used to determine the type of media streaming to the media presentation device.

'642 Pat. 3:46-63. The patent referred to this as a "relatively simple method of monitoring" because the network meter could access these unencrypted data packets and interpret them as needed. *Id.*

One of the problems the '642 patent purported to address, however, was that with the advent of new streaming devices and services, a network meter was no longer able to read network traffic, because network traffic data was typically encrypted:

> With the advent of new methods of streaming (e.g. Roku, Amazon Fire TV Stick, Google Chromecast, Amazon Fire TV Cube, etc.), such network traffic data may not clearly represent the media that is streaming. For example, the network traffic data that is accessible by a network meter is generally encrypted with only a few metrics that are not encrypted. These unencrypted metrics do not accurately represent what data is being transferred over the network. For example, a streaming service, such as Netflix may use content delivery networks, such as Akamai® or Level 3®. In such an example, a streaming device may request media to stream to a media presentation device. The media that is sent to the streaming device may not be clearly represented by unencrypted metrics of the network traffic data. Because of this unclarity, the network traffic data that is collected by the network meter cannot be used to determine if media is streaming on a media presentation device connected to the network.

*Id.* at 3:63-4:14.

The ’642 patent attempts to deal with this problem of performing monitoring when the network meter is unable to read network traffic. The supposed solution of the patent generally refers to the use of a “traffic profile.” *Id.* at 11:31-51. A traffic profile correlates certain network traffic conditions (such as traffic patterns) with known streaming services. *Id.*; *id.* at 12:42-49. That way, a system can use a network meter to monitor network conditions, and from that information, identify the known streaming service that is correlated with the identified traffic patterns. *Id.* at 16:15-29.

The asserted claims do not recite a “traffic profile.” That concept was present in earlier patents in the family, but not in the ’642 patent. But the fundamental problem that was being addressed—the inability to access certain data packets on the network—reinforces that what is being claimed here is monitoring of the network itself, and not monitoring for communications that happen to use the network.

**c. Nielsen’s Proposal is Not a Construction**

Nielsen’s proposed construction offers no affirmative definition of the disputed term. But Nielsen’s brief reveals a dispute, as it asserts that the monitoring limitation could be satisfied by

a direct communication with a device (presumably because that communication makes use of the network). (Nielsen Op. Br., *supra* at 5-6.) Nielsen should not be able to hide its true interpretation under the guise of "plain and ordinary meaning."

Nielsen's construction also adds that "the term does not require waiting for a notification of an identity of the streaming device." TVision no longer contends that the claims require the network meter to wait for such a notification, so that point is moot. But Nielsen's reliance on that point highlights the fundamental problem with its proposal: rather than explaining what the claim language means, Nielsen seeks to define it by what it does not mean.

Claim construction is a tool that will assist the fact finder in assessing critical issues such as infringement and invalidity. A construction that merely excludes one purported interpretation, while providing no affirmative guidance as to the meaning of the term, does not aid that inquiry. Nielsen's proposal should be rejected.

**d. Conclusion**

For the foregoing reasons, TVision respectfully requests that the Court adopt Defendant's proposed construction of the disputed term.

**3. Nielsen's Reply Position**

**a. There Is No Claim Construction Dispute for the Court to Resolve, as the Parties Agree that the Plain and Ordinary Meaning Applies to the Term**

The parties' proposed constructions (as revised) present no actual dispute for the Court to resolve, as TVision now agrees that these terms carry their plain and ordinary meaning. TVision's new proposal goes beyond Nielsen's in that TVision purports to state what the plain and ordinary meaning requires: "that the local area network must be monitored." But TVision's additional language merely repackages the words of the claim language in a different order, with the addition of the phrase "must." That is pointless: "Claim construction is a matter of resolution of disputed

meanings . . . . It is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Given that the parties agree on plain and ordinary meaning and the extra words TVision tacks on add nothing to the meaning of the claim—and more likely would serve only to confuse the jury—the Court should decline to construe these terms.

**b. The Limitations TVision Advocates in Its Brief Appear Nowhere in Its Construction and Are Unsupported[6]**

Although its proposed construction says nothing of the kind, TVision argues in its brief that the plain and ordinary meaning of these terms is subject to unstated limitations on how the local area network is "monitored." (Answering Brief, *supra* at 11–13.) Specifically, TVision contends the scope of the terms requires monitoring local area network "characteristics and activity that can be observed," including "traffic patterns, packet flows, bandwidth usage, devise connections, latency, routing activity, or other network-wide conditions," but excludes doing so in a manner that involves "[c]ommunicating with a device . . . over the network." (*Id.* at 2.) These additional limitations are not in TVision's proposed construction, which states only that the "local area network must be monitored." The Court should thus reject TVision's arguments for this reason alone: the limitations TVision advocates are not part of the construction it asks the Court to adopt.

In any event, the limitations TVision argues for should also be rejected on the merits, as they find no support in the claim language, the specification, or the prosecution history.

---

[6] TVision has also waived its claim construction positions for these terms as it failed to provide advanced notice of its amended constructions to Nielsen or seek leave of the Court, thus TVision's actions lack timeliness and good cause and violate the Rules and the Scheduling Order. (*See* Rule 16(b)(4); D.I. 24 at 12–13; Tips Regarding *Markman* Briefing and Hearings at No. 9 (warning of waiver for late notice of new claim construction positions).) Additionally, and for the same reasons, TVision has also waived its ability to rely on portions of the specification and prosecution history that were not disclosed as part of the Joint Claim Construction Chart.

**i. The Claim Language Does Not Support TVision's Limitations**

Nothing in the claim language places any limitations on how the recited "monitoring" can be accomplished. Thus, the Court should reject TVision's limitations in the first instance because the patentee's intent not to limit "monitoring" to particular approaches is evidenced by the fact that there are no such limitations written in the claim.

TVision contends that other claim elements are purportedly "directed to communications with a device," such as "querying," "transmitting," and "receiv[ing]," and argues that because these other elements "use different language" from the "monitoring" element, "monitoring" cannot involve communications with a device. TVision's argument makes no sense. Nothing about the terms "querying," "transmitting," or "receiving" are somehow more expressly directed to communications than the term "monitoring the local area network," and TVision cites no evidence to show that the first three concern communications but "monitoring" cannot.

**ii. The Specification Contradicts TVision's Limitations**

TVision fails to identify any disclosure in the specification that supports limiting "monitoring the local area network" to particular ways of monitoring. Claim terms are given the full scope of their ordinary meaning absent lexicography or a clear and unmistakable disavowal of claim scope, and TVision does not attempt to show either one here. *See Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365–67 (Fed. Cir. 2012).

Indeed, the specification actually contradicts TVision's attempt to limit the scope of these terms. The patent discloses a "network meter . . . that monitors the *network traffic data*." (*See* '642 patent at 7:10–46 (emphasis added).) The patent further explains that "network traffic data" include communications between devices and may also include information about these communications in the aggregate, such as "the number of communications between a client device

and a host device." (*Id.* at 7:36–46.) Further, the patent expressly contemplates that the "network meter 106 may also be configured to *communicate with other devices* . . . *such as*, for example, the media presentation device meter 110 and *the streaming device 112*." (*Id.* at 7:15–19.) Thus, TVision's proposed scope limitation is without merit.

Nonetheless, TVision mistakenly contends that in the '642 patent "the fundamental problem that was being addressed—the inability to access certain data packets on the network—reinforces that what is being claimed here is monitoring of the network itself and not monitoring for communications that happen to use the network." (Answering Brief, *supra* at 14–15.) TVision argues that the use of a "traffic profile" is the '642 patent's solution to the "problem of monitoring when the network meter is unable to read network traffic." (*Id.* at 4.) TVision's discussion of the "traffic profile" is a red herring that has nothing to do with the construction of the term here. As TVision admits, "[t]he asserted claims do not recite a 'traffic profile.'" (*Id.* at 5.) Moreover, the specification discloses that a "traffic profile" is something that can be generated as a result of monitoring, it is not a limitation on how the monitoring is done:

> ***After receiving***, at the central facility 118, the streaming data and/or ***monitoring report*** from the media presentation device meter 110 and the network traffic data and/or the identifier for the active application on the streaming device 112 and/or the identity of the streaming device 112 from the network meter 106, the central facility 118 may combine the streaming data and the network traffic data to ***generate a traffic profile*** that is representative of the streaming media being presented on the media presentation device 108.

(*See* the '642 patent at 10:41–49.)

**iii. The Prosecution History Does Not Support TVision's Limitations**

TVision's interpretation and reliance on the prosecution history of the '642 patent is incorrect and does not justify its proposed limitations. Specifically, TVision contends that the

originally filed claims "required monitoring the network to perform device discovery," but Nielsen opted to amend the claims, purportedly because "[t]he examiner stated that the disclosures in the patent concerning device discovery were limited to active communications with devices—which was not monitoring the network." (Answering Brief, *supra* at 11–13.) That is wrong: Nothing in the examiner's position took issue with "monitoring the network." Rather, the examiner contended the specification did not disclose support for the requirement "to discover . . . that the streaming device is accessing media," and Nielsen amended the claim after an interview with the examiner to use different terms, "[w]ithout acquiescing in the Office's reasoning for rejecting the claims under 112":

| | |
|---|---|
| Examiner's Position | 1.1.1. Independent claims 1, 10, 16, and 22 recite "monitoring a network ***to discover***, on the network, ***that the streaming device is accessing media*** …". The Specification, as originally filed on 12/4/2018, in the chain of continuity, fails to disclose any such discovery. Though ¶¶ [68] and [78] of the Specification, as published in USPGPUB 2020/0177966, mention discovering, such discoveries are limited to querying of the devices. |
| Amended Claim Limitation | monitoring ~~a~~ the local area network to ~~discover, on the network, that~~identify the streaming device on the local area network, wherein the streaming device is accessing media from the Internet and providing the media to a television for presentation; |

(*See* Ex. 5, Feb. 1, 2024 Office Action at 3; Ex. 6, May 15, 2024 Response to Office Action at 3, 9.) Thus, TVision's reliance on the prosecution history is without merit.[7]

[7] Contrary to TVision's contention (at 3), Nielsen's position in its Opposition to TVision's Motion to Dismiss is consistent with its current position. Nielsen's characterization of the limitation to include "[m]onitoring network conditions and basing identification of a streaming device on network conditions" (D.I. 13 at 16) does not exclude communications with a device or "monitoring data communicated over a network."

### iv. TVision's Arguments Raise Questions of Fact, Not Claim Construction

TVision's position does not present a dispute over the meaning of the claim term, but rather over what activities satisfy it—i.e., what evidence is sufficient to show the claim limitation is infringed. That is a question of fact. Indeed, the focus of TVision's arguments is on the factual question of what activities "satisfy" the claim language, and not on what the language means:

- "[t]o satisfy the plain language of the claim . . . the system must monitor some aspect of the local area network" (TVision Answering Brief, *supra* at 2);
- "[a] system does not satisfy this limitation simply because it exchanges information" (*id.*);
- "the monitoring limitation could be satisfied by a direct communication with a device" (*id.* at 5).

"Engag[ing] in fact finding rather than implicit claim construction" is not the purpose of claim construction, which should be "'discern[ing] the meaning of a particular term.'" *Edwards Lifesciences Corp. v. Cardiovalve Ltd.*, 2025 WL 1618096, at *4 (Fed. Cir. 2025) (citing *Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1319 (Fed. Cir. 2013)). Moreover, as TVision itself told the Court, "[a] construction that merely excludes one purported interpretation, while providing no affirmative guidance as to the meaning of the term, does not aid" the fact finder "in assessing critical issues such as infringement and invalidity." (Answering Brief, *supra* at 15.) Yet that is exactly what TVision seeks: to exclude one particular approach to "monitoring the local area network," without shedding any additional light on what the claim term means (because it needs no explanation). TVision's arguments should be rejected.

### c. Conclusion

For the foregoing reasons, Nielsen respectfully requests that the Court hold that no construction of these terms is necessary and reject the limitations that TVision advocates in its brief (but omits from its proposed construction).

#### 4. TVision's Surreply Position

##### a. THE CLAIM RECITES "MONITORING [A] LOCAL AREA NETWORK," NOT MONITORING COMMUNICATIONS ON A LOCAL AREA NETWORK

Nielsen acknowledges that TVision's construction is the plain and ordinary meaning. Reply Br., *supra* at 2 (TVision's construction "simply repeats the words of the term in reverse order"). Nielsen, however, disputes that plain and ordinary meaning. To justify its argument, Nielsen contends TVision's construction excludes monitoring communications on a network. This is a strawman. TVision's position is only that the network must be monitored and monitoring a communication that happens to use the network is not by itself "monitoring the local area network."

The patent itself presents a clear contrast of the two acts in Column 19, lines 4 to 19. There, the patent provides an example of where the network meter is monitoring the network, and in the process of doing that looks for a notification on the network (annotated below in red). The patent distinguishes that step (monitoring) from the network meter engaging in direct communication with other devices on the network and interpreting those communications (referred to as "query[ing]", annotated below in blue):

> The program 600 continues at block 604 where the network meter 106 monitors a network (e.g. the network 114) for a notification of an identity of a streaming device (e.g. streaming device 112). If the notification is not received and/or obtained, the program 600 continues to block 602. However, if the notification is received and/or obtained, the program 600 continues to block 606 where the network meter 106 initiates a device discovery process. The example device discovery process of block 606 causes the network meter 106 to query devices in the media exposure measurement location 102 to determine information on active processes running on the other devices in the media exposure measurement location 102. For example, the network meter 106 queries the streaming device 112 to determine the active application running on the streaming device 112.

'642 Pat. at 19:4-18 (annotations added).

The difference in the language the patent uses to describe these actions is informative. If in the process of monitoring a network and observing its operation, the network meter captures and interprets a message such as a notification, there is an issue of fact as to whether the claim is satisfied. But the claim cannot be satisfied simply because a network meter uses the network to communicate with other devices and then interprets those responses. That is contrary to the claim language, and exactly what the patent distinguishes in Column 19.

#### b. THE PROSECUTION HISTORY SUPPORTS TVISION'S CONSTRUCTION

The prosecution history confirms that engaging in communications over a network is not by itself enough. Nielsen's side-by-side table contrasting the examiner's rejection with the amended claim language proves this point. The claim originally required "monitoring a network to discover a device" was "accessing media":

| | |
|---|---|
| Examiner's Position | 1.1.1. Independent claims 1, 10, 16, and 22 recite "monitoring a network ***<u>to discover</u>***, on the network, ***<u>that the streaming device is accessing media</u>*** …". The Specification, as originally filed on 12/4/2018, in the chain of continuity, fails to disclose any such discovery. Though ¶¶ [68] and [78] of the Specification, as published in USPGPUB 2020/0177966, mention discovering, such discoveries are limited to querying of the devices. |
| Amended Claim Limitation | monitoring ~~a~~ <u>the local area</u> network to ~~discover, on the network, that~~ <u>identify the streaming device on the local area network, wherein</u> the streaming device is accessing media from the Internet and providing the media to a television for presentation; |

Reply, *supra* at 19.

In the context of what the patent disclosed regarding "accessing media," the examiner considered the recited claim language ("monitoring a network to discover, on the network, that the streaming device is accessing media….") and rejected it, stating that the only type of discovery the cited paragraphs disclosed was the "querying of the devices" on the network. Nielsen's

response was to amend the claim away from discovering a device was accessing media and limit it to simply identifying a device.[8] *Id.*

Thus, the examiner identified the same distinction TVision identifies here: monitoring a network is different than querying devices using the network. Based on that distinction, the examiner found that a disclosure regarding querying devices in the specification did not disclose monitoring a network. If Nielsen believed that "monitoring a network" was the same as "communicating with a device over a network," it could—and should—have made that argument to the examiner during prosecution, instead of amending its claim. Nielsen did not, and now tries to recapture that argument under its supposed "plain and ordinary meaning" of the disputed term.

Nielsen's argument—that the examiner did not take issue with "monitoring the network"—is besides the point. The relevant point here is that in the context of how the patent teaches discovering if a device was accessing media, the examiner was distinguishing between the concepts of monitoring a network and querying devices. As support, the examiner cited paragraph 78 from the printed publication, U.S. 2020/0177966, which is the same as the Col. 19 passage cited above. *Compare* U.S. 2020/0177966 ¶ 78; *with* '642 Pat. at 19:4-18. Consistent with the examiner's finding, the cited paragraph mentioned discovering whether a device is accessing media, but only in the form of querying devices, which was not monitoring a network. '642 Pat. at 19:11-16 ("The example device discovery process of block 606 causes the network meter 106 to query devices in the media exposure measurement location 102 to determine information on active processes running on the other devices in the media exposure measurement location 102.").

Thus, this prosecution history supports TVision's construction and not Nielsen's.

---

[8] That same paragraph also referred to monitoring the local area network to identify a device (e.g., through a notification). The applicant's amendments targeted this disclosure, and not the disclosure of using a query to perform device discovery.

### c. NIELSEN'S CONSTRUCTION CONTRADICTS THE CLAIM LANGUAGE

Whereas the claim language is consistent with TVision's construction, Nielsen's construction requires rewriting the claim as monitoring communications that use the local area network. That is simply not what is claimed and Nielsen is unable to rebut TVision's argument.

First, Nielsen has no explanation for its own characterization of the plain and ordinary meaning. In Nielsen's opposition to TVision's Motion to Dismiss, Nielsen included the following table that interpreted the claim:

| '642 Patent, Claim 17 Claim Language | TVision's Characterization | Actual Contents of Limitation |
|---|---|---|
| * * * | | |
| monitoring the local area network to identify the streaming device on the local area network, wherein the streaming device is accessing media from the Internet and providing the media to a television for presentation; | Monitoring network data and identifying streaming device | Monitoring network conditions and basing identification of a streaming device on network conditions created when a streaming device is accessing media from the Internet and providing that media to a television for presentation (works in tandem with limitation below) |

D.I. 13 at 16.

Nielsen's prior interpretation is consistent with TVision's construction. The limitation refers to monitoring the network and its "conditions"—not monitoring communications that happen to use the network at some point.

Second, Nielsen has no answer to the fact that other claim limitations expressly recite communications with a device. Claims must be read in the context of the claim language as a whole. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). And where a patentee expressly includes a particular concept in some limitations but omits it from others, that distinction is significant because it shows the applicant's choice of words was deliberate. *Karlin*

*Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971–72 (Fed.Cir.1999) ("the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope."). That is precisely what occurred here. The disputed limitation refers to "monitoring" a network. In contrast, other limitations expressly recite communicating with other devices, including "querying the streaming device" (claim 1), "transmitting the identifier . . . to a server" (claim 2), and "receiv[ing] media from the router" (claim 5). Nielsen is correct that the individual verbs "querying," "transmitting," and "receiving" are not themselves dispositive. But the critical point is that, in each of those limitations, the applicant expressly recited communication with a device. The absence of similar language in the "monitoring a network" limitation further confirms that "monitoring" means exactly what it says, and is not the same as communicating with a device over the network. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

#### d. THE PURPOSE OF THE PATENT SUPPORTS TVISION'S CONSTRUCTION

Understanding what the patent purports to have contributed to the state of the art also supports TVision's construction. Nielsen cannot dispute the problem the patent was supposedly intended to address was that existing systems were unable to identify streaming media by monitoring data packets communicated on the network, for example, because those data packets were encrypted. '642 Pat. at 3:62-4:29. Beyond the portions of the specification cited in TVision's opening brief, Nielsen itself identified this as a purported deficiency in the prior art. See D.I. 1 ¶¶ 18-19. In this context, the '642 patent recites a technique for determining the streaming media regardless of inaccessibility of the encrypted data packets.

Thus, when the patent is claiming "monitoring the local area network," it is referring to a monitoring a network in that context, *i.e.*, where communications are encrypted. The patent does not claim to have invented some new technique of "monitoring the network" that would allow it to read these encrypted communications. It also does not purport to recite a system that is able to bypass encryption. Rather, it acknowledges the state of the art prohibits access to communications on the network (*e.g.*, due to encryption) and therefore can only "monitor[] the local area network" to identify devices on the network. This requirement would not make sense where the network meter is engaged in direct communication with the streaming device, as if that were the case, the network meter would no longer need to worry about avoiding encryption. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (internal citations omitted).

The patent goes on to claim a technique for identifying the actively streaming application that ***does*** involve direct communications with the streaming device. Specifically, the subsequent steps in the claims require "querying the streaming device." It is this "querying" step Nielsen attributes as the advancement over the prior art and the problems posed by underlying encrypted communications. D.I. 1 ¶ 29 ("The '642 patent claims are directed to using a specific, technical technique to determine the active, running application—querying the streaming device after determining that such a device is accessing media from the Internet and providing the media to a television."). But "querying the streaming device" is a different claimed step, one that expressly

calls for communications between devices, and Nielsen cannot interpret the two different steps to have the same scope.

Nielsen's argument regarding the "traffic profile" is irrelevant. TVision is not interpreting the claims to require a "traffic profile." TVision clearly acknowledged it was not claimed. The purpose of the discussion of the "traffic profile" was only to put a fine point on what the patent contends is the invention: the step of actively communicating with (or "querying") devices over the network after those devices have been identified through the process of monitoring the network. This is also consistent with the applicant's decision in the file history, where the applicant elected to maintain a claim limitation directed to "monitoring the local area network" and introduce a separate amendment directed towards "querying" the device to identify the streaming application.

Instead of rebutting this, Nielsen relies on quotes from Column 7, lines 10 to 46, but that passage undermines Nielsen's argument instead of supporting it. TVision does not dispute the patent refers to a network meter that, among other things, monitors network traffic *and* communicates with other devices using the network. But the patent never equates communicating with other devices using the network with monitoring the network. Even within the passage Nielsen cites, the patent refers to communicating with other devices through the network as additional functionality. '642 Pat. at 7:10-46 ("The network meter 106 ***may <u>also</u> be configured to communicate with other devices*** in the media exposure measurement location 102 such as, for example, the media presentation device meter 110 and the streaming device 112."); *Id.* ("The network meter 106 ***may <u>also</u> be configured to query devices*** in the media exposure measurement location 102 to determine information on active processes running on the other devices in the media exposure measurement location 102."). This passage therefore does not support the

argument that "monitoring the local area network" is the same as monitoring communications that happen to be on that network.

### e. THE DISPUTED ISSUES RELATE TO CLAIM SCOPE

Nielsen's remaining argument—that TVision's position "raise[s] questions of fact, not claim construction"—has it backwards. TVision's position is precisely the kind of legal question *Markman* contemplates: what does the claim mean in view of statements in the specification, prosecution history, and legal doctrines like claim differentiation. *See Phillips*, 415 F.3d at 1314 (en banc); *see also Markman v. Westview Instr., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc). This complex legal analysis is what *Markman* was intended for, and is a question of law that should be addressed by the Court—not the jury. *Id.* Once the Court defines what "monitoring the local area network" means, the parties can separately address, at summary judgment or trial, whether TVision's accused systems perform that construed step. But declining to construe the term, as Nielsen urges, would simply defer the legal question to the jury under the guise of "plain and ordinary meaning," inviting exactly the kind of confusion *Markman* is designed to avoid. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

### f. CONCLUSION

For the foregoing reasons, TVision respectfully requests that the Court adopt TVision's proposed construction.

POTTER ANDERSON & CORROON LLP

By: */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

Steven Yovits
Douglas Lewis
Jason Greenhut
Matthew Kennison
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Brian Rosenthal
Katherine Dominguez
Eric J. Stock
Brian J. Forsatz
Kate Swisher
Simone B. Yhap
Angelle Henderson
Jefferson E. Bell
Katie Zavadski
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 351-4000

Joshua Lipton
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, DC 20036
Tel: (202) 955-8500

SHAW KELLER LLP

By: */s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
Nathan R. Hoeschen (No. 6232)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
nhoeschen@shawkeller.com
arussell@shawkeller.com

OF COUNSEL:

Jason Xu
RIMON LAW
1990 K Street, NW, Suite 420
Washington, DC 20006
Tel: (202) 470-2141

Steig D. Olson
Sami H. Rashid
Andrew Faisman
Szymon Barnas
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 Fifth Avenue
New York, NY 10016
Patrick D. Curran
QUINN EMANUEL URQUHART & SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
Tel: (212) 849-7000

Patrick D. Curran
QUINN EMANUEL URQUHART & SULLIVAN LLP
11 Huntington Avenue, Suite 5200
Boston, MA 02199
Tel: (617) 712-7100

James J. Lischeske
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence St., Suite 3000
Denver, CO 80202

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: August 20, 2026
13107568 / 14944-00011

Adam B. Wolfson
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

Richard A. Koffman
Daniel McCuaig
Benjamin D. Brown
Grace Choi
Alexander J. Noronha
Alexandra Wolfson
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
Suite 800
Washington, DC 20005
Tel: (202) 408-4600

Aamir A. Kazi
FISH & RICHARDSON
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 724-2811

Benjamin C. Elacqua
Fish & Richardson P.C.
909 Fannin Street, Suite 2100
Houston, TX 77002
Tel: (713) 654-5300

*Attorneys for Defendant TVision Insights, Inc.*